## HENNIG v. GLOBE FOUNDRY CO.

1. MASTER AND SERVANT—INJURY TO EMPLOYÉ—TRIAL—INSTRUCTIONS.

Where a foundry employé, who was struck and injured by a car used to haul coal and iron up an incline, brought suit against his employer, alleging that the wire cable by which the car was hoisted and lowered had become weak and unsafe, so that, by reason of a slight jerk, it broke upon the occasion of the accident, and upon the trial the engineer, who was responsible for lowering the car, testified that the cable merely became detached, and that he did not discover the fact until too late, the defendant was entitled to have the jury instructed that if they should find that the cable was in a reasonably safe and proper condition for use, and that the accident was occasioned by the negligence of the engineer in not seeing that the cable was attached, their verdict should be for defendant, and a general instruction that the engineer was a fellow-servant of plaintiff, for whose negligence there could be no recovery, was insufficient, especially in view of the fact that the plaintiff's theory of the case was fully presented.

2. SAME—DEFECTIVE APPLIANCE—EVIDENCE.

The fact that a witness who examined the cable after the accident found a "little rust" upon it was insufficient to raise a question for the jury as to its safe condition.

3. SAME—PROXIMATE CAUSE—FELLOW-SERVANTS.

If the cable was reasonably safe for the purpose for which it was intended, and the accident was due to the negligence of the engineer in sending the car down the incline with the cable slack, defendant was not liable.

Error to Wayne; Frazer, J. Submitted April 15, 1897. Decided May 11, 1897.

Case by William Hennig against the Globe Foundry Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

The plaintiff was an employé of the defendant.  Connected with the foundry was a cupola.  A steep incline led from the ground to a platform near the top of the cupola.  On this incline were two tracks of iron rails, over which pig and scrap iron and coal were conveyed to the platform in a car about five feet long and three feet wide.  The car was hoisted and lowered by means of a wire cable extending around an iron drum operated by steam.  On the end of the cable was a loop made by bending the cable upon itself, and binding the end to the cable with wire.  Attached to the car was a hook.  By means of this loop and hook the car could be attached to and detached from the cable.  It was one of the duties of the plaintiff to carry the iron in a wheelbarrow to, and load it upon, the car.  While he was performing this duty, the cable was usually detached from the car by him, when it reached the ground, and the car pushed to the proper place for loading.  It was also the duty of plaintiff to hook and unhook the car, and he had done so for some time.  At night the car was left on the platform at the top of the incline.  It was the duty of the engineer to lower this car.  On the morning of the accident he had difficulty in pushing the car to the edge of the platform.  He pulled it back some distance, so as to give slack to the rope. He then pushed the car to the incline.  For some reason the car became detached from the rope, and rushed down the incline, striking the wheelbarrow which the plaintiff was in the act of wheeling across the track.  The wheelbarrow was thrown against the plaintiff, and he was injured.  He plants his suit for damage upon the negligence of the defendant.  The negligence alleged was, in the first count, that the cable "became cracked, rusty, rotten, weak, and unsafe, so that a slight pressure or jerk was liable to cause said cable to part at the point where the ring pressed against it; all of which said defendant well knew, but which said defendant neglected and refused to change or repair after acquiring such knowledge."  The second count is, in substance, the

same; alleging, for the same reasons, that the cable was incapable of supporting and holding the car. The theory of the plaintiff was that, when the car started down the incline, the cable was attached to it; that the rope was slack; that when about five feet down the incline, the slack being then taken up, the sudden jerk tore or broke the cable from the hook; that the break or tear was due to the bad condition of the rope, which condition the defendant ought to have known and provided against. The engineer, who was the sole witness to the accident, testified that, in pulling the car back, the cable became detached from the car; that he did not discover it until it was too late to stop it; that he called out to plaintiff, in an attempt to warn him of the danger; and that the cable was used the same day, and for some time thereafter, in the same condition that it was before the accident. Plaintiff recovered verdict and judgment.

*Keena & Lightner*, for appellant.

*Charles W. Chapman* (*Moore & Moore*, of counsel), for appellee.

GRANT, J. (*after stating the facts*). 1. The first error assigned is the refusal of the court to give the following request:

"If you find from the evidence in this case that the car and cable were in reasonably safe and proper condition for use, and that it was the negligence of the engineer, Marshall, in not seeing that the cable was attached to the car before he shoved it down the incline, plaintiff cannot recover."

Nowhere in his instructions did the learned circuit judge refer to the theory of the defendant. He did charge that the engineer was a fellow-servant, and that for his negligence there could be no recovery. It was, however, of importance that the judge should state to the jury the theory of the defendant, especially in view of the fact that he fully stated the claim of the plaintiff. *Poole* v. *Railway Co.*, 100 Mich. 388, where authorities are cited.

2. The following requests were preferred on behalf of the defendant, and refused:

"There is no evidence in this case that the defendant had any reason to suppose the cable was not in reasonably safe condition for the use it was intended, up to the time of the accident. The verdict of the jury must therefore be for the defendant.

"There is no evidence that the defendant had or is chargeable with notice of the defect in the cable claimed by plaintiff to have caused the accident.

"There is no evidence that the cable was not reasonably safe for the work it was intended, and the jury cannot be permitted to draw any inference of defect or negligence in the defendant from the pulling out of the hook, alone.

"The pulling out of the hook in the manner claimed by the plaintiff is not of itself sufficient to charge the defendant with negligence in this case.

"There is no evidence that the defendant had any notice of a defect in the cable, or that it was not in as good and safe condition as it was the day before, when the evidence shows it pulled the car up the incline, heavily laden, without breaking; and the plaintiff is not entitled to recover."

In view of these requests, and the instruction of the court, it is important to fully state the testimony which it is claimed tends to sustain the charge of negligence. It is not claimed that the cable or hook was faulty in construction, or otherwise, or that they had been in use for such length of time as to require examination or replacement. Nor is there any evidence that they had become so worn that an inspection should have condemned them as unfit for use. Plaintiff, who hooked and unhooked them many times every day, does not testify that he saw any signs of wearing or weakness or unfitness for use. Thirty loads of iron and coal had been drawn up the day before, the last weighing 800 pounds. Plaintiff, on his direct examination, testified, "The rope broke, and they did not get on the brake in time, and the car came down fast." This is all he said about the cause of the accident. On his re-direct and re-cross examination he testified that the

loop on the cable was the one that broke, and that the engineer showed him the broken part in the engine room, where he was taken after the accident. He finally testified that he did not see the break himself, but that the engineer told him. All his testimony upon this point was therefore stricken out as hearsay. The only other testimony upon this point was that of Charles Licht, who was employed in the cupola at the time of the accident. We give the following excerpts from his testimony:

"I went up on top the cupola, where the rope was. I saw the end of the rope. It is a wire rope.

"Q. Just tell the jury how the wire rope was drawn out,—how it pulled out.

"Mr. Keena: There is no evidence that it pulled out. It is leading.

"The Court: State how it appeared.

"Q. Tell how it looked,—how it appeared.

"A. How the rope broke?

"Q. How the rope broke.

"Mr. Keena: There is no evidence that the rope broke.

"A. The carriage came down,—the bucket that they hoist pig iron on. They shoved the carriage down, and the rope stayed upstairs.

"Mr. Keena: Who shoved the carriage down?

"A. I didn't see the man shove it down.

"Q. (By Mr. Moore). What did you see on the loop? What did the end of the rope look like?

"A. It was wore out. It was not wore out, but it was pulled out.

"Q. And the ring?

"A. And the ring stayed in the carriage.

"Q. It was worn out—

"Mr. Keena: Hold on. There are other ways of asking questions of witnesses.

"The Court: Ask him what he saw.

"Q. How much of it was broken? What part was broken of the end of the wire rope? You say it pulled out. How did it pull out? (Objected to.)

"The Court: That is improper.

"Q. You say it pulled out. Will you just explain how it pulled out?

"A. It pulled out. It was not wore, I guess, but it pulled out. It was wore through. Not wore through, but it broke.   *   *   *

"*Q.* What was the appearance of the wire rope, as to being rusty or bright?

"*A.* It was a little rusty, that it wore through. It didn't wear through, but it pulled out."

The end of the cable was near the top of the incline. On cross-examination, counsel for the defendant attempted to elicit from the witness whether a portion of the end of the cable forming the loop separated from the cable, but failed in doing so. The principal fact testified to by him was that the loop was pulled out.

The above comprises all the testimony from which negligence can be inferred. It is unnecessary to cite authorities to show that this accident, even if the rope broke, was not of itself sufficient evidence of negligence. The duty of the defendant towards its employés was fully performed when it had provided a cable reasonably safe for the purpose for which it was intended. The law imposed no duty upon it to provide a cable which would stand the unusual strain placed upon it through the negligence of one of its employés, who was a fellow-servant with the plaintiff. If the proximate cause of the accident was the negligence of the engineer in unhooking the cable from the car, or in sending it down the incline with a slack cable and an unset brake, the plaintiff cannot recover. There is no testimony in the case to show the weight of this car, or the strength of cable required to withstand the force upon it caused by a sudden drop of the car down the incline. The cable may have been of ample strength to pull loaded cars up and to let empty cars down in the usual manner. There is no evidence that it was not sufficient for that purpose. In fact, it had proved sufficient for that purpose. The sudden descent of the car through the negligence of an employé was an accident which the defendant could not foresee, and against which it was not required to provide. There is no evidence that the cable was cracked or rotten. The fact that witness Licht saw a "little rust" upon it is no evidence of an unsafe condition. Rust will form on iron in a single night.

The record is barren of any evidence tending to show that a cable entirely safe for ordinary use would not pull out or break by the sudden strain to which it was subjected by the negligence of the engineer. There is also no evidence that the "pressure or jerk" was "slight," as alleged in the declaration. *Piette* v. *Brewing Co.*, 91 Mich. 609. It follows that, under this record, the court should have given the above requests.

Judgment reversed and new trial ordered.

The other Justices concurred.