### MILES SWEENY *vs.* OLD COLONY AND NEWPORT RAILROAD COMPANY.

If a railroad company have made a private crossing over their track, at grade, in a city, and allowed the public to use it as a highway, and stationed a flagman there to prevent persons from undertaking to cross when there is danger, they may be held liable in damages to one who, using due care, is induced to undertake to cross by a signal from the flagman that it is safe, and is injured by a collision which occurs through the flagman's carelessness.

TORT to recover damages for a personal injury sustained by being run over by the defendants' cars, while the plaintiff was

crossing their railroad by license, on a private way leading from South Street to Federal Street, in Boston.

At the trial in this court, before *Chapman*, J., it appeared that this private way, which is called Lehigh Street, was made by the South Cove Corporation for their own benefit, and that they own the fee of it; that it is wrought as a way, and buildings are erected on each side of it, belonging to the owners of the way, and there has been much crossing there by the public for several years. The defendants, having rightfully taken the land under their charter, not subject to any right of way, made a convenient plank crossing and kept a flagman at the end of it on South Street, partly to protect their own property, and partly to protect the public. They have never made any objection to such crossing, so far as it did not interfere with their cars and engines. There are several tracks at the crossing. The only right of the public to use the crossing is under the license implied by the facts stated above.

On the day of the accident, the defendants had a car at their depot which they had occasion to run over to their car-house. It was attached to an engine and taken over the crossing, and to a proper distance beyond the switch. The coupling-pin was then taken out, the engine reversed, and it was moved towards the car-house by the side track. The engine was provided with a good engineer and fireman, and the car with a brakeman; the bell was constantly rung, and the defendants were not guilty of any negligence in respect to the management of the car or engine.

As the engine and car were coming from the depot, the plaintiff, with a horse and a wagon loaded with empty beer-barrels, was coming down South Street from the same direction. There was evidence tending to show that, as he approached the crossing, the flagman, who was at his post, made a signal to him with his flag to stop, which he did; that, in answer to an inquiry by the plaintiff whether he could then cross, he then made another signal with his flag, indicating that it was safe to cross; that the plaintiff started and attempted to cross, looking straight forwards; that he saw the car coming near him as it went

towards the car-house; and that he jumped forward from his wagon, and the car knocked him down and ran over him and broke both his legs. It struck the fore wheel of his wagon and also his horse. If he had remained in his wagon, or had not jumped forwards, or had kept about the middle of the crossing, the evidence showed that he would not have been injured personally. His wagon was near the left-hand side of the plank crossing as he went.

The defendants contended that, even if the plaintiff used ordinary care, and if the flagman carelessly and negligently gave the signal that he might cross, when in fact it was unsafe to do so on account of the approaching car, the plaintiff was not entitled to recover, because the license to people to use the crossing was not a license to use it at the risk of the defendants, but to use it as they best could when not forbidden, taking care of their own safety, and going at their own risk; and also, that if the flagman made a signal to the plaintiff that he might cross, he exceeded his authority.

But the evidence being very contradictory as to the care used by the plaintiff, and also as to the care used by the flagman, the judge ruled, for the purpose of taking a verdict upon these two facts, that the defendants had a right to use the crossing as they did on this occasion, and that they were not bound to keep a flagman there; yet, since they did habitually keep one there, they would be responsible to the plaintiff for the injury done to him by the car, provided he used due care, if he was induced to cross by the signal made to him by the flagman, and if that signal was carelessly or negligently made at a time when it was unsafe to cross on account of the movement of the car.

The jury returned a verdict for the plaintiff for $7500; and the case was reserved for the consideration of the whole court.

*J. G. Abbott & P. H. Sears*, for the defendants. The defendants had, for all purposes incident to the complete enjoyment of their franchise, the right of exclusive possession and use of the place where the accident happened, against the owners of the fee, and still more against all other persons. *Hazen* v. *Boston & Maine Railroad*, 2 Gray, 574. *Brainard* v. *Clapp*, 10 Cush. 6.

Gen. Sts. *c.* 63, §§ 102, 103. The defendants were not bound to keep a flagman there, or exercise the other precautions prescribed for the crossing of highways or travelled places. Gen. Sts. *c.* 63, §§ 64–66, 83–91. *Boston & Worcester Railroad* v. *Old Colony Railroad*, 12 Cush. 608. The license or permission, if any, to the plaintiff to pass over the premises did not impose any duty on the defendants, but he took the permission, with its concomitant perils, at his own risk. *Howland* v. *Vincent*, 10 Met. 371, 374. *Scott* v. *London Docks Co.* 11 Law Times, (N. S.) 383. *Chapman* v. *Rothwell*, El., Bl. & El. 168. *Southcote* v. *Stanley*, 1 Hurlst. & Norm. 247. *Hounsell* v. *Smyth*, 7 C. B. (N. S.) 729, 735, 742. *Binks* v. *South Yorkshire Railway, &c.* 32 Law Journ. (N. S.) Q. B. 26. *Blithe* v. *Topham*, 1 Rol. Ab. 88; *S. C.* 1 Vin. Ab. 555, *pl.* 4; Cro. Jac. 158. The defendants did not hold out to the plaintiff an invitation to pass over. *Hounsell* v. *Smyth* and *Binks* v. *South Yorkshire Railway*, above cited. The allowing or making of such private crossing was not in itself such an invitation, and did not involve the duty of such precautions. The keeping of a flagman there was wholly for the purpose of preventing persons from crossing, not for the purpose of holding out invitations at any time. The signal that the plaintiff might cross was in answer to his inquiry, and was, at most, only revoking the prohibition, or granting permission; it was not holding out an invitation. The duty of the flagman was simply to warn persons against crossing; and if the flagman held out an invitation or even gave permission to the plaintiff to cross, he went beyond the scope of his employment, and the defendants are not liable on account thereof. *Lygo* v. *Newbold*, 9 Exch. 302. *Middleton* v. *Fowle*, 1 Salk. 282. Even if the defendants had carelessly held out an invitation to the plaintiff to cross, still they would not be liable; for the report shows that after such supposed invitation the plaintiff might, by the exercise of ordinary care, have avoided the injury; that the plaintiff was himself at the time in the wrong; and that his own negligence and fault contributed to the accident. *Todd* v. *Old Colony & Fall River Railroad*, 7 Allen, 207; *S. C.* 3 Allen, 18, and cases cited. *Denny* v. *Williams*, 5 Allen, 1,

and cases cited. *Spofford* v. *Harlow*, 3 Allen, 177, and cases cited.

*S. J. Thomas*, for the plaintiff.

BIGELOW, C. J. This case has been presented with great care on the part of the learned counsel for the defendants, who have produced before us all the leading authorities bearing on the question of law which was reserved at the trial. We have not found it easy to decide on which side of the line, which marks the limit of the defendants' liability for damages caused by the acts of their agents, the case at bar falls. But on careful consideration we have been brought to the conclusion that the rulings at the trial were right, and that we cannot set aside the verdict for the plaintiff on the ground that it was based on erroneous instructions in matter of law.

In order to maintain an action for an injury to person or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty towards the plaintiff, which the defendant has left undischarged or unfulfilled. This is the basis on which the cause of action rests. There can be no fault, or negligence, or breach of duty, where there is no act, or service, or contract, which a party is bound to perform or fulfil. All the cases in the books, in which a party is sought to be charged on the ground that he has caused a way or other place to be incumbered or suffered it to be in a dangerous condition, whereby accident and injury have been occasioned to another, turn on the principle that negligence consists in doing or omitting to do an act by which a legal duty or obligation has been violated. Thus a trespasser who comes on the land of another without right cannot maintain an action, if he runs against a barrier or falls into an excavation there situated. The owner of the land is not bound to protect or provide safeguards for wrongdoers. So a licensee, who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or

occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited to enter or induced to come upon them by the purpose for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter thereon.

On the other hand, there are cases where houses or lands are so situated, or their mode of occupation and use is such, that the owner or occupant is not absolved from all care for the safety of those who come on the premises, but where the law imposes on him an obligation or duty to provide for their security against accident and injury. Thus the keeper of a shop or store is bound to provide means of safe ingress and egress to and from his premises for those having occasion to enter thereon, and is liable in damages for any injury which may happen by reason of any negligence in the mode of constructing or managing the place of entrance and exit. So the keeper of an inn or other place of public resort would be liable to an action in favor of a person who suffered an injury in consequence of an obstruction or defect in the way or passage which was held out and used as the common and proper place of access to the premises. The general rule or principle applicable to this class of cases is, that an owner or occupant is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any invitation, allurement or inducement, either express or implied, by which they have been led to enter thereon. A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident. The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure, and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because ne was led to believe that they were intended to be used by visitors or passengers, and that such

use was not only acquiesced in by the owner or person in pos-session and control of the premises, but that it was in accord-ance with the intention and design with which the way or place was adapted and prepared or allowed to be so used. The true distinction is this : A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no lia-bility ; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obli-gation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby.

This distinction is fully recognized in the most recent and best considered cases in the English courts, and may be deemed to be the pivot on which all cases like the one at bar are made to turn. In *Corby* v. *Hill*, 4 C. B. (N. S.) 556, the owner of land, hav-ing a private road for the use of persons coming to his house, gave permission to a builder engaged in erecting a house on the land to place materials on the road ; the plaintiff, having occa-sion to use the road for the purpose of going to the owner's residence, ran against the materials and sustained damage, for which the owner was held liable. Cockburn, C. J. says : " The proprietors of the soil held out an allurement whereby the plain-tiff was induced to come on the place in question ; they held this road out to all persons having occasion to proceed to the house as the means of access thereto." In *Chapman* v. *Rothwell*, El., Bl. & El. 168, the proprietor of a brewery was held liable in damages for injury and loss of life caused by permitting a trap-door to be open without sufficient light or proper safeguards, in a passage way through which access was had from the street to his office. This decision was put on the ground that the de-fendant, by holding out the passage way as the proper mode of approach to his office and brewery, invited the party injured to go there, and was bound to use due care in providing for his safety. This is the point on which the decision turned, as stated by Keating, J., in *Hounsell* v. *Smyth*, 7 C. B. (N. S.) 738 In the last named case the distinction is clearly drawn betweer the liability of a person who holds out an inducement or

invitation to others to enter on his premises by preparing a way or path by means of which they can gain access to his house or store, or pass into or over the land, and in a case where nothing is shown but a bare license or permission tacitly given to go upon or through an estate, and the responsibility of finding a safe and secure passage is thrown on the passenger and not on the owner. The same distinction is stated in *Barnes* v. *Ward,* 9 C. B. 392; *Hardcastle* v. *South Yorkshire Railway, &c.* 4 Hurlst. & Norm. 67; and *Binks* v. *South Yorkshire Railway, &c.* 32 Law Journ. (N. S.) Q. B. 26. In the last cited case the language of Blackburn, J. is peculiarly applicable to the case at bar. He says, " There might be a case where permission to use land as a path may amount to such an inducement as to lead the persons using it to suppose it a highway, and thus induce them to use it as such." See also, for a clear statement of the difference between cases where an invitation or allurement is held out by the defendant, and those where nothing appears but a mere license or permission to enter on premises, *Balch* v. *Smith,* 7 Hurlst. & Norm. 741, and *Scott* v. *London Docks Co.* 11 Law Times, (N. S.) 383.

The facts disclosed at the trial of the case now before us, carefully weighed and considered, bring it within that class in which parties have been held liable in damages by reason of having held out an invitation or inducement to persons to enter upon and pass over their premises. It cannot in any just view of the evidence be said that the defendants were passive only, and gave merely a tacit license or assent to the use of the place in question as a public crossing. On the contrary, the place or crossing was situated between two streets of the city, (which are much frequented thoroughfares,) and was used by great numbers of people who had occasion to pass from one street to the other, and it was fitted and prepared by the defendants with a convenient plank crossing, such as is usually constructed in highways, where they are crossed by the tracks of a railroad, in order to facilitate the passage of animals and vehicles over the rails. It had been so maintained by the defendants for a number of years. These facts would seem to bring the case within the

principle already stated, that the license to use the crossing had been used and enjoyed under such circumstances as to amount to an inducement, held out by the defendants to persons having occasion to pass, to believe that it was a highway, and to use it as such. But the case does not rest on these facts only. The defendants had not only constructed and fitted the crossing in the same manner as if it had been a highway, but they had employed a person to stand there with a flag, and to warn persons who were about to pass over the railroad when it was safe for them to attempt to cross with their vehicles and animals, without interference or collision with the engines and cars of the defendants. And it was also shown that when the plaintiff started to go over the tracks with his wagon, it was in obedience to a signal from this agent of the defendants that there was no obstruction or hindrance to his safe passage over the railroad. These facts well warranted the jury in finding, as they must have done in rendering a verdict for the plaintiff under the instructions of the court, that the defendants induced the plaintiff to cross at the time when he attempted to do so, and met with the injury for which he now seeks compensation.

It was suggested that the person employed by the defendants to stand near the crossing with a flag exceeded his authority in giving a signal to the plaintiff that it was safe for him to pass over the crossing just previously to the accident, and that no such act was within the scope of his employment, which was limited to the duty of preventing persons from passing at times when it was dangerous to do so. But it seems to us that this is a refinement and distinction which the facts do not justify. It is stated in the report that the flagman was stationed at the place in question, charged among other things with the duty of protecting the public. This general statement of the object for which the agent was employed, taken in connection with the fact that he was stationed at a place constructed and used as a public way by great numbers of people, clearly included the duty of indicating to persons when it was safe for them to pass, as well as when it was prudent or necessary for them to refrain from passing.

Nor do we think it can be justly said that the flagman in fact held out no inducement to the plaintiff to pass. No express invitation need have been shown. It would have been only necessary for the plaintiff to prove that the agent did some act to indicate that there was no risk of accident in attempting to pass over the crossing. The evidence at the trial was clearly sufficient to show that the agent of the defendants induced the plaintiff to pass, and that he acted in so doing within the scope of the authority conferred on him. The question whether the plaintiff was so induced was distinctly submitted to the jury by the court; nor do we see any reason for supposing that the instructions on this point were misunderstood or misapplied by the jury. If they lacked fulness, the defendants should have asked for more explicit instructions. Certainly the evidence as reported well warranted the finding of the jury on this point.

It was also urged that, if the defendants were held liable in this action, they would be made to suffer by reason of the fact that they had taken precautions to guard against accident at the place in question, which they were not bound to use, and that the case would present the singular aspect of holding a party liable for neglect in the performance of a duty voluntarily assumed, and which was not imposed by the rules of law. But this is by no means an anomaly. If a person undertakes to do an act or discharge a duty by which the conduct of others may properly be regulated and governed, he is bound to perform it in such manner that those who rightfully are led to a course of conduct or action on the faith that the act or duty will be duly and properly performed shall not suffer loss or injury by reason of his negligence. The liability in such cases does not depend on the motives or considerations which induced a party to take on himself a particular task or duty, but on the question whether the legal rights of others have been violated by the mode in which the charge assumed has been performed.

The court were not requested at the trial to withdraw the case from the jury on the ground that the plaintiff had failed to show he was in the exercise of due care at the time the accident happened. Upon the evidence, as stated in the report

we cannot say, as matter of law, that the plaintiff did not establish this part of his case.    *Judgment on the verdict.*

After the above decision was rendered, the verdict was set aside, by *Chapman*, J., as against the evidence.