FRANK E. MOORE *vs.* EDWARD STETSON, and others.

Penobscot.     Opinion February 24, 1902.

*Marine Railway.   Licensor and Licensee.   Servant.   Appliances.   Negligence.
Assuming Risk.*

In a case where the owners of a steamer, desiring to make repairs upon her, contracted with the owners of a marine railway to take the steamer out of the water upon the railway, for the purpose of repairs, and to return her to the water when the repairs were finished, and the owners of the steamer were to have the use and occupancy of the railway, while the repairs were being made, and were to employ their own men, and furnish their own materials in making the repairs, and were to pay a certain sum per day for the use of the railway, *held;* that the relation of the parties was not that of lessor and lessee, but rather that of licensor and licensee.

The licensors owed to the licensees and to the servants of the licensees engaged in the work of repairs, the duty of seeing to it that their railway and appliances, so far as they were used in the repair of the steamer, were in a reasonably safe condition; and that if the licensors failed to perform that duty, they are not relieved from liability to a servant of the licensees by the fact that the master of the steamer in charge of the repairs, knew the condition of the railway alleged to be unsafe and by which the servant was injured, and neglected to notify the servant thereof.

*Held;* that the evidence in this case fails to show negligence on the part of the defendant.

The stone, the insecure condition of which the plaintiff contends produced his injury, was placed and maintained upon the bed-piece of the railway for the purpose of ballast, and for no other purpose. The defendant had no reason to suppose it would be used for any other purpose. The evidence fails to disclose that the stone was not fitted or sufficiently secured for the purpose for which it was intended and used. Nor is there any testimony that prior to, or at the time when the steamer was taken from the water, the stone was not safely and securely placed and held in position. It is not contended that the defendants knew that the stone was liable to tip.

*Held; also,* that, from the position of the stone, its irregular shape and great size, it must have been apparent to the plaintiff that it was intended for ballast only, and was not intended to be used as a place for workmen to walk, stand or work in the performance of their labor, or for any purpose.

When a workman uses an appliance or instrumentality for a purpose for which it is not intended, the intended use being apparent and obvious, he does so at his own risk. In so using the stone for a purpose for which it was obviously not intended, the plaintiff, in this case, assumed the risk of danger, and cannot hold the defendants responsible for the consequences. The verdict for the plaintiff, therefore, cannot be sustained.

Motion and exceptions by defendants. Motion sustained. Exceptions overruled.

Case, for personal injuries.

The facts appear in the opinion.

*C. J. Hutchings and P. H. Gillin,* for plaintiff.

Counsel contended, among other things, that the mere fact that the primary object of the presence upon the railway of the rock which caused the injury to plaintiff, was to sink the railway when shoved into the water, is not necessarily inconsistent with plaintiff's contention that he had a right to step upon the rock in the course of his duty. If, from its position, the attending circumstances, the custom at the railway, or necessity he was invited to step thereon, he would not necessarily be guilty of contributory negligence in so doing.

*F. H. Appleton and H. R. Chaplin,* for defendants.

SITTING: WISWELL, C. J., STROUT, SAVAGE, FOGLER, POWERS, JJ.

FOGLER, J. This is an action of case in which the plaintiff seeks to recover damages for personal injuries sustained by him through the alleged negligence of the defendants. The verdict was for the plaintiff, and the defendants bring the case here upon exceptions and also upon a motion for new trial. There is little controversy, if any, between the parties, as to the facts, which are substantially as follows:

The defendants were the owners of a marine railway situate in Brewer on the Penobscot river. In May, 1897, the owners of the steamer "Golden Rod," desiring to have that steamer repaired, cleaned and painted, entered into a contract, orally, through Capt.

Crosby, master of the steamer, with the defendants, by the terms of which the defendants' were to take the steamer out of the water upon their railway and to return her to the water when the repairs were finished, for a certain sum. The owners of the steamer were to have the use and occupancy of the railway for the purpose of repairing their steamboat until the repairs and other necessary work were finished. The steamboat owners were to employ their own men and furnish their own materials. For the use of the railway while the repairs were being made the steamboat owners were to pay the defendants five dollars per day. Under this agreement the defendants took the steamer out of the water, and the steamboat owners entered into the occupancy, and had the use of the railway until the repairs were completed. The defendants neither exercised nor attempted to exercise any control or management of the railway while it was occupied by the steamer. The steamboat owners employed the men and furnished the materials for the repairs and other work upon the steamer. The plaintiff was mate of the steamer "Golden Rod" and was employed by the owners of the steamer in the work of repairs from the time the steamer was placed upon the railway until he met with the injury for which he claims damages.

In the construction of the railway two permanent stationary tracks extend from the shore into the river below high-water mark. Upon these tracks are two bed-pieces. These bed-pieces rest lengthwise on the tracks or rails so they will slide up and down, and are connected and held together by large cross-sills. Upon these bed-pieces and cross-sills, rests the cradle upon which the vessel lies when upon the railway. Upon the above named bed-pieces are large blocks of granite which are placed there as ballast, in order to hold the bed-pieces down upon the tracks or rails when they are slid into the water. One of these granite blocks, so placed, was irregular in shape, being two and five-tenths feet wide at one end and one and seven-tenths feet wide at the other end and one and one-half feet high, and rested on a bed-piece twelve inches wide. This stone was not, at the time the plaintiff was injured, securely and firmly fastened to the bed-piece upon which it rested, but had become so loosened that it canted or tipped when a man stepped or walked upon it.

On the day when the plaintiff met with the accident, he was employed in painting the steamer. A plank rested on the cross-pieces between the rock and the vessel which the plaintiff wished to use upon a staging which ran along the side of the steamer. He stepped upon this rock and stood facing the vessel. The plank was six inches, or thereabouts, lower than the rock upon which he stood. As the plaintiff stooped downward and forward to pick up the plank, the rock, as he testifies, slid forward and caught his leg between the rock and the plank, and the bone of his leg was thereby broken and he brings this action against the defendant to recover damages for that injury.

It is not claimed that the defendants or their agents knew that the stone had become loosened, while Capt. Crosby, master of the steamer and agent of her owners, testifies that he knew that the stone "teetered" and that he gave no notice of the fact to either the plaintiff or the defendants.

The defendants' exceptions, after stating the case, are as follows:

"The defendants requested the court to instruct the jury as follows:

"1. If Capt. Crosby knew the stone teetered (and he testifies that he did) and by reason thereof the place was rendered dangerous to work in, because the stone was loose, and Capt. Crosby did not notify the plaintiff of the fact, and ordered or allowed the plaintiff to work in such place of danger under such circumstances, without notifying the plaintiff of the danger, the negligence of Capt. Crosby in not notifying the plaintiff of the danger and in ordering or allowing the plaintiff to work in the place known to Capt. Crosby to be dangerous, without notifying the plaintiff of the danger, would constitute negligence on the part of the steamboat company. Therefore, these defendants cannot be held liable in this action, because the negligence of the steamboat company was intervening negligence of a third person who can be held liable to the plaintiff in an action therefor.

"2. If the jury find that the defendants were negligent, and if Capt. Crosby knew the stone teetered (and he testifies that he did) and there being no proof that the defendants, or their agents or servants, knew the stone teetered, and because the stone was inse-

curely fastened, the place was thus rendered dangerous to work in, and Capt. Crosby did not notify either the plaintiff or the defendants, or their agents or servants, of the fact that the stone was loose, and Capt. Crosby either ordered or allowed the plaintiff to work in the place, under the circumstances, the steamboat company, which Capt. Crosby represented, would be liable to the plaintiff for knowingly allowing the plaintiff to thus work in a place of danger without notifying him of the danger; and the negligence of the steamboat company being subsequent to any negligence on the part of the defendants, and because Capt. Crosby had knowledge of the negligence of the defendants (if they were negligent) and due care on the part of Capt. Crosby toward plaintiff, and the performance of duty which was upon Capt. Crosby, to notify the plaintiff of the danger, would have prevented the injury, these defendants cannot be held liable to plaintiff in this action.

" 3.    The defendants were under no duty to have the stone so securely fastened that it would be safe to walk upon.

" 4.    By the agreement between Capt. Crosby and these defendants the relation of lessor and lessee was established, and the owners of the 'Golden Rod' were occupying the railway as tenants: hence these defendants cannot be held liable in this action.

" 5.    The rock or stone was used for the purpose of sinking the ways.    It served its purpose and the accident did not occur because the rock was so placed upon the way that it failed to sink it.    The rock was entirely visible to the eye of the plaintiff, and the purpose which it served and the position it occupied was self-evident.    It was apparent that it was intended to sink the ways and was not intended to be walked upon.    The plaintiff, if he undertook to use the rock for a purpose other than for the one for which it was designed, was guilty of negligence unless he first ascertained whether it was so securely placed that he could safely step upon it, because a glance at the rock would have informed him that it was irregular in shape and that it might teeter or cant if he undertook to step or walk upon it.

" Which said instructions the court, in order to make progress with the case, declined to give except so far as given in the charge, to

which refusal, said defendants except and pray that their exceptions may be allowed."

We do not think that, by the terms of the contract, the relation of landlord and tenant was created between the defendants and the steamboat owners. The testimony fails to show that the defendants granted to the steamboat owners any interest in or any right to control their railway plant. On the contrary, Capt. Crosby who made the arrangement, testifies: "I had no charge of the railway, of course. I didn't consider myself the owner of Mr. Stetson's property; only the boat." Again: "They were to haul the boat out of the water, and I was to do my own repairs."

If a tenancy was created, it could only be a tenancy at will, and could only be terminated by mutual consent or by thirty days' notice in writing given by either party to the other. This could not have been contemplated by the parties. The privilege granted to the steamboat owners to make repairs while the boat lay upon the ways was a license only. The owners of the boat were licensees and not tenants.

A license is an authority to do a particular act, or a series of acts, upon another's land without possessing an estate therein. *Pitman* v. *Poor*, 38 Maine, 237, and cases there cited; *Cook* v. *Stearns*, 11 Mass. 533. A somewhat analogous case is that of *Inhabitants of Rockport* v. *Rockport Granite Company*, 177 Mass. 246, in which it is held that a "motion man" quarrying paving blocks on the land of another under an agreement to pay the land owner two dollars for each thousand blocks quarried, is a licensee. The court says: "He is not a tenant. He has no right of possession in the land worked by him, but merely the privilege of quarrying rock on it and working up the rock into marketable shape. The payments made by him to the quarry owner are by way of stumpage and not a payment by way of rent."

In the case at bar the payment of five dollars per day was not a payment of rent, but a payment for the privilege of the steamboat remaining on the railway during the period required for repairs.

We are of the opinion that the refusal of the presiding justice to instruct the jury that the relation of landlord and tenant was estab-

lished and that the owners of the "Golden Rod" were occupying the railway as tenants, was correct and that the defendants' exceptions in that respect should be overruled.

The exceptions to the refusal of the presiding justice to give the first and second requested instructions, involving as they do the duties and obligations of licensees to the employees of the latter, may be discussed and considered together.

As before stated, the relation of the defendants and the owners of the steamboat was that of licensor and licensee. The latter were not mere, or bare, licensees, but were licensees by the express invitation or permission of the defendants. In case of a mere passive license it is generally held that the licensee takes upon himself all risks as to the condition of the premises; although the licensor is liable for his own active negligence.

But in case of express license, or even implied license, the authorities hold that the licensors assume an obligation to see to it that the premises are in a reasonably safe condition. The liability of the licensor in such case is clearly stated in *Bennett* v. *Louisville and Nashville R. R. Co.*, 103 U. S. 577:—

"The owner or occupant of land, who, by invitation express or implied, induces or leads another to come upon his premises for any lawful purpose, is liable in damages to such persons,— they using due care,— for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist without timely notice to the public or to those who were likely to act upon such invitation."

In *Carleton* v. *Franconia Iron & Steel Co.*, 99 Mass. 216, the law is thus stated: "The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist and has given them no notice of."

To the same effect is *Penn. R. R. Co.* v. *Atha*, 22 Fed. Rep. 920,

in which the court say, citing *Nickerson* v. *Tirrell*, 127 Mass. 236: "The owner or occupier of a dock is undoubtedly liable for damages to a person who makes use of it by his invitation, express or implied, for an injury caused by any defect or unsafe condition of the dock which he negligently causes or permits to exist, provided, of course, the person himself exercises due care. He is not an insurer of the safety of his dock, but he is required to use reasonable care to keep it in such a state as to be safe for the use of vessels which he invites to enter it, or for which he holds it out as fit and ready. If he fails to use such care—if there is a defect which is known to him, or which, by the use of ordinary prudence and diligence, should be known to him — he is guilty of negligence, and liable to the person who, using due care, is injured thereby."

Numerous authorities might be cited to the same effect.

The rule above laid down applies not only to real estate, but also to machinery and appliances used by the licensee by the invitation, expressed or implied, of the licensor. *Johnson* v. *Spear*, 76 Mich. 139, 15 Am. St. Rep. 298.

Applying the law thus laid down the defendants, licensors, owed to the steamboat owners, licensees, the duty of seeing to it that their railway and appliances, so far as they were used in the repair of the steamboat were in a reasonably safe condition.

The duty which the licensor thus owes to the licensee, he also owes to the servants of the licensee.

In the case of *Johnson* v. *Spear*, supra, the plaintiff, an employee of a contractor for hoisting coal, was injured by the breaking of a defective chain, a part of the hoisting apparatus. It was held that he could recover damages of the owner of the dock and hoisting gear for the injuries so sustained. The court say, citing authorities, p. 144: "It is analogous to that class of cases where the owner of real property is held liable to any one who, expressly or impliedly invited upon his premises, is injured by a concealed defect therein." It is further stated by the court: "If injuries result from negligence of the defendant, [the property owner] while work is being done upon his premises, and through his fault in not keeping them in a safe and suitable condition, he is liable to any servants of the con-

tractor for injuries resulting to them from defects therein; not because there is any contract obligation between the parties, but arising out of his obligations or duty to provide safe appliances for the servants of the contractors to use, and to keep his premises upon which such servants are at work in a reasonably safe condition, whether the contract provides for it or not." See *Coughtry* v. *Globe Woolen Co.*, 56 N. Y. 124, 15 Am. Rep. 387.

Nor do we think that the failure of Capt. Crosby to notify the plaintiff that the stone was liable to tip, which fact he testifies was known to him, absolves the defendants from liability for their own negligence, if they were negligent.

The plaintiff was employed upon the defendants' premises by their implied invitation and possession and they owed to him certain duties. Capt. Crosby was not their agent in any respect, and his negligent acts could not relieve them from their performance of their duties or from their liability for their non-performance.

The defendants' exceptions to the refusal of the presiding justice to give the first and second requested instructions must be overruled.

As to the other exceptions, it appears by the charge that the presiding justice fully and correctly instructed the jury as to the legal duty and liability of the defendants, and left it to the jury to decide the case upon all the testimony and all the circumstances. We cannot hold that this was error. Those exceptions are therefore overruled.

On motion: Upon their motion for new trial the defendants contend, first that the evidence fails to prove negligence on their part; and, secondly, the plaintiff's injury was, even by his own testimony, the result of his own negligence.

We are of opinion that the motion should be sustained upon both the points thus raised.

First: It was the duty of the defendants to provide workmen employed upon their railway with reasonably safe appliances and instrumentalities for the labor and service to be performed by them. They were liable only for such defects or dangerous conditions as were known to them or of which they ought to have known by the exercise of reasonable diligence. The stone, the insecure condition

of which the plaintiff contends produced his injury, was placed and maintained upon the bed-piece of the railway, for the purpose of ballast and for no other purpose. The defendants had no reason to suppose it would be used for any other purpose.

The evidence fails to disclose that the stone was not fitted, or sufficiently secured for the purpose for which it was intended and used. Nor is there any testimony that prior to or at the time, when the " Golden Rod " was taken from the water, the stone was not safely and securely placed and held in position. It is not contended by the plaintiff that the defendants at or before the time when the plaintiff was injured, had any knowledge that the stone was liable to tip. Before the steamer was taken from the water the defendants' foreman, who had held that position for several years, and another witness, made an examination of the railway and its appurtenances and found, as they testify, that everything was apparently in a suitable condition. We are of opinion that the testimony fails to show negligence on the part of the defendants.

Second: From the position of the stone, its irregular shape and its great size, it must have been apparent to the plaintiff that it was intended for ballast only, and was not intended to be used as a place for workmen to walk, stand or work in the performance of their labor, or for any purpose. It is a familiar rule of law that when a workman uses an appliance or instrumentality for a purpose for which it was not intended, the intended use being apparent and obvious, he does so at his own risk, and if by so doing he meets with an injury, the employer is not liable therefor. *Demers* v. *Deering,* 93 Maine, 272; *Felch* v. *Allen,* 98 Mass. 572.

Assuming that the plaintiff met with his injury, in the manner and under the circumstances to which he testifies, he went upon the rock in question; and, standing on its edge which projected several inches over the bed-piece upon which the stone was placed, leaned forward and downward for the purpose of picking up a plank which lay six inches below the bottom of the stone. While he was in this position the stone canted or tipped, causing a fracture of the plaintiff's leg.

In so using the stone for a purpose it was obviously not intended, he assumed the risk of danger and must suffer for his own fault or folly.

*Exceptions overruled.    Motion sustained.*

*New trial granted.*