JONES, Respondent, v. E. S. WOODWORTH & COMPANY, et al, Appellants.

(249 N. W. 799.)

(Files Nos. 7497, 7499.   Opinion filed August 12, 1933.)

B. A. Walton, of Aberdeen (Geo. H. Fletcher, of Aberdeen, of counsel), for Appellants.

Julius Skaug, of Mobridge, and J. M. Berry, of Ipswich, for Respondent.

WARREN, J.   This is an action brought by the plaintiff for damages sustained by her when she fell and injured her right limb at defendant's place of business, namely, at the Stevens' elevator.   The jury returned a verdict in favor of the plaintiff in the sum of $1,850 and against the defendants, E. S. Woodworth & Co. and H. A. Stevens.   From an order denying a motion for new

trial and from the judgment, each defendant has appealed separately.

There is considerable conflict in the evidence as presented in the briefs. As to the actual accident and who was present at the time respondent fell and injured herself, both the appellant and respondent give entirely different testimony. On June 13, 1930, respondent, accompanied by her nephew, George Jones, drove to appellant's elevator to purchase grain for her chickens. They parked the car and walked up the driveway of the elevator; respondent's nephew walking on the footpath beside the grating upon which the respondent walked. Respondent testified that the grating looked perfectly safe and flat. She contends that Mr. Stevens was not there, but was loading a car with grain in another part of the elevator when they arrived, and that she walked to the east end of the grating and then turned north toward one of the bins to see if there was any wheat in it. As she turned north, her foot caught between the grating and the scale platform and she fell, breaking her right limb about three inches below the hip. She also contends that Stevens, one of the appellants, came from around the elevator, assisted her nephew in freeing her limb from the grating, and that they carried her to the office when they found that she could not walk. She was later removed to the hospital.

The appellant Stevens' testimony as to what occurred is entirely the opposite. He contends that he was at the north end of the elevator with his brother, and was loading a car with grain; that his brother, who was out in the driveway, called to him and told him that he had a customer and that he (the appellant) went out into the driveway and there met George Jones, whom he introduced to his brother, telling Jones that his brother was from Canada; that they stood there talking; that he took the grain sacks from Jones, and was standing there when respondent walked up the driveway and across the grating. His testimony is as follows: "I had not started to fill the bags. I was going to step back to this bin and she was standing on this grating and she made a move to turn facing north. I saw her turn her ankle. I was looking right at her. She had turned her face kind of to the northeast and as she lost her balance, that is when she reached for him and she did catch hold of him and she sat down upon her rear right here. * * * I was standing over here and I jumped to the grating and it seems

to me it was the fourth or fifth bar and raised it, and she said, 'No, it is not my foot, it is my hip.'"

The grating upon which respondent was injured is about seven feet long and four feet wide. It is constructed of steel slats, about three-eighths of an inch in thickness and placed in slots so that the tops slant to the east at an angle of 45 degrees and are level with the floor and scale platform. They are about three inches apart, with the exception of the last one to the east, and the distance as testified to by the appellant Stevens between the last slat and the scale platform is about three and a half inches. The scale platform was constructed so that it had a clearance distance of from one to one and a half inches on all sides of it. The platform could move about an inch to the east, which would cause an opening of about four and a half inches. The hole between the last slat and the scale platform was covered by a rubber belting which was nailed along the scale platform. It was upon this belting that respondent contends she stepped and which piece of belting concealed the danger of stepping on that spot between the last slat and the scale platform.

Respondent in this case had been a customer of appellant's elevator for three or four years prior to the accident, having purchased her chicken feed there during that time. Appellant contends that respondent was not an invitee, but a licensee. In the case of Tierney v. Graves Motor Co., 185 Minn. 114, 239 N. W. 905, 907, on the question of who were invitees, the court said: "What constitutes an invitee is stated over and over again in the cases and in the texts. In 3 Sherman & Redfield on Negligence (6th Ed.) § 706, this definition, often quoted, is given: 'Invitation by the owner or occupant is implied by law where the person going on the premises does so in the interest or for the benefit, real or supposed, of such owner or occupant, or in the matter of mutual interest, or in the usual course of business, or where the person injured is present in the performance of duty, official or otherwise.'"

The appellants contend that they are not liable, even though they maintained this concealed trap, for the reason that the invitation did not extend to the part of the building where the accident and injury occurred. The question then arises: To what part of the building did the invitation extend? As respondent walked up the ramp, she could see that appellant Stevens was not in his office,

and, wishing to see the sort of wheat she was to buy, she turned to look into the bin from which she had last purchased wheat, at which time she had helped the appellant fill the sacks.

In the case of Pauckner v. Wakem et al, 231 Ill. 276, 83 N. E. 202, 205, 14 L. R. A. (N. S.) 1118, in passing upon the extent of an invitation where the plaintiff had gone to the warehouse to obtain certain property, it was held: "* * * The invitation to appellee was to go into the warehouse to get such goods belonging to his employer as were wanted, and for this purpose the invitation must be held broad enough to give appellee, the protection of the law while lawfully upon that portion of the premises reasonably embraced within the object of his visit."

In the case of Patten v. Bartlett, 111 Me. 409, 89 A. 375, 49 L. R. A. (N. S.) 1120, the court refers to and quotes with approval certain authorities cited and quoted in Moore v. Stetson et al, 96 Me. 197, 52 A. 767, 770. In Moore v. Stetson, supra, the court said as follows:

"But in case of express license, or even implied license, the authorities hold that the licensors assume an obligation to see to it that the premises are in a reasonably safe condition. The liability of the licensor in such case is clearly stated in Bennett v. Railroad Co., 102 U. S. 577, 26 L. Ed. 235: 'The owner or occupant of land, who, by invitation express or implied, induces or leads another to come upon his premises for any lawful purpose, is liable in damages to such persons,—they using due care,—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist without timely notice to the public or to those who were likely to act upon such invitation.'

"In Carleton v. Steel Co., 99 Mass. 216, the law is thus stated: 'The owner or occupant of land is liable in damages, to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for any injury, occasioned by the unsafe condition of the land or of the access to it, which is known to him, and not to them, and which he has negligently suffered to exist and has given them no notice of."

"To the same effect is Railroad Co. v. Atha (D. C.) 22 F. 920, in which the court say, citing Nickerson v. Tirrell, 127 Mass.

236: 'The owner or occupier of a dock is undoubtedly liable for damages to a, person who makes use of it by his invitation, express or implied, for an injury caused by any defect or unsafe condition of the dock which he negligently causes or permits to exist, provided, of course, the person himself exercises due care. He is not an insurer of the safety of his dock, but he is required to use reasonable care to keep it in such a state as to be safe for the use of vessels which he invites to enter it, or for which he holds it out as fit and ready. If he fails to use such care—if there is a defect which is known to him, or which, by the use of ordinary prudence and diligence, should be known to him—he is guilty of negligence, and liable to the person who, using due care, is injured thereby.'"

■ But whether or not respondent was a mere licensee, or acting within the scope of her implied invitation, and whether the appellants were negligent in the premises, were clearly questions of fact to be decided by the jury, and not by the judge as a matter of law. See Conway v. Chas. H. Wood & Co., 113 Minn. 476, 129 N. W. 1045; Schmidt v. Michigan Coal & Mining Co., 159 Mich. 308, 123 N. W. 1122; Nelson v. F. W. Woolworth & Co., 211 Iowa, 592, 231 N. W. 665; Elkton Auto Sales Corporation v. State of Maryland (C. C. A.) 53 F. (2d) 8; Powers v. Nathan Straus, Inc., 157 A. 131, 9 N. J. Misc. 1227; Cable v. Donahue & Hamlin, Inc., 85 N. H. 258, 161 A. 383.

■ The appellants contend that there was contributory negligence on the part of the respondent. However, the respondent testified that the hole into which she stepped was hidden, being covered with rubber belting, and that upon her stepping onto it the belting gave way and went through with her foot into the hole. In the case of Wiggins v. Pay's Art Store et al, 47 S. D. 443, 199 N. W. 122, 124, our court, on the question of contributory negligence, said: "It is a rule of law that it is not contributory negligence not to look out for danger when there is no reason to apprehend any."

And in the case of Loney v. Laramie Auto Co., 36 Wyo. 339, 255 P. 350, 354, 53 A. L. R. 73, the court in passing on the question of contributory negligence, stated: "The issue of negligence or contributory negligence is ordinarily one to be determined by the jury. 20 R. C. L. 109, 166. That is true, even in a case where

the testimony, as in the case at bar, is undisputed, if different minds may fairly arrive at different conclusions, and where the inferences from the facts are not so certain that all reasonable men, in the exercise of fair and impartial judgment, must agree upon them."

In the case of Whaley v. Vidal et al, 27 S. D. 627, 132 N. W. 242, 245, which was an action brought by a guardian to recover for damages sustained by the death of the father at a railroad crossing of the defendant railway company, one of the contentions of the defendants was that the deceased was guilty of contributory negligence. In passing upon this point, the court said: "Where reasonable men might draw different conclusions from the undisputed evidence, the question of negligence or contributory negligence is one of fact for the jury, and it is only when the evidence is without material conflict and is such that all reasonable men must draw the same conclusions therefrom that the question is for the court."

And in the companion case of Whaley v. Vidal, 27 S. D. 642, 132 N. W. 248, 250, in treating the question of contributory negligence, the court said: "As stated in our former opinon, it seems to be the settled law that contributory negligence is an affirmative defense in a case where the defendant has been shown to be guilty of negligence and must be proven by the defendant, either by direct evidence, or by proof of circumstances from which only the inference of contributory negligence could be drawn." See, also, State v. Yellow Cab Co., 62 N. D. 733, 245 N. W. 382; Dougherty v. Davis, 48 N. D. 883, 187 N. W. 616; Martin v. Parkins, 55 N. D. 339, 213 N. W. 574.

A judgment was entered against the appellants jointly, and appellant E. S. Woodworth & Co. strenuously contends that there was no evidence introduced to show appellant Woodworth & Co.'s liability. The evidence shows that in June, 1927, the appellant Stevens entered into an agreement with four parties to whom he owed money. These four parties, namely, John and Elizabeth Owens, R. R. Buikema, the First State Bank of Ipswich, and E. S. Woodworth & Co., pooled their interests and agreed to extend the time of payment, and also agreed that E. S. Woodworth & Co. should supervise the running of the elevator and buy all the grain shipped by Stevens to Minneapolis, and that out of the gross profits

of the elevator a salary should be paid to Stevens, and from the balance then remaining the interest on each indebtedness should be paid; that, should there be a balance remaining after the payment of the interest, the same should be divided up amongst the parties of the second part to apply on the principal sums according to the amount due each of them. Business appears to have been good, and at the end of the year The First State Bank of Ipswich and John and Elizabeth Owens had been paid in full. Owens and his wife deeded the elevator property back to Stevens; Buikema extended a mortgage which he held against the property; and E. S. Woodworth & Co. accepted the mortgage. Thus the indebtedness to all four of the creditors was satisfied, and there was no occasion to further extend the contract made in 1927.

Under the undisputed evidence the appellant E. S. Woodworth & Co. at no time after the execution of the mortgage made on June 23, 1928, exercised any authority or control over the appellant Stevens or over the elevator, and the only interest E. S. Woodworth & Co. had in Stevens' elevator was in seeing Stevens make good in order that he might extinguish his indebtedness to them and in such profits as they might make as commission merchants in the selling of grain from the elevator, which profits were credited on his indebtedness.

This case is somewhat similar to the case of Meier & Lockwood Corporation v. Dakota Live Stock & Investment Co. et al, 46 S. D. 408, 193 N. W. 138, in which our court held that a corporation lending money to the operator of a hay camp is not chargeable with his negligence causing fire. In the case at bar, E. S. Woodworth & Co. became the mortgagee and creditor of H. A. Stevens, and as such was not liable for damages caused by negligence on the part of its debtor the appellant Stevens.

As we view the facts, the trial court would have been fully justified in directing a verdict for the defendant E. S. Woodworth & Co. upon the ground that there was no evidence whatever upon which any liability could be predicated, for the reason that the evidence fails to show that the Woodworth Company had anything to do with the maintenance of the property or keeping in repair the alleged defective instrumentality. We further find that the evidence shows that the relation between the two appellants at the time of the injury to the respondent was purely that of debtor

and creditor. The defendant Woodworth & Co. and H. A. Stevens perfected separate appeals to this court, but joined in the briefs and record.

The order and judgment appealed from in case No. 7499 brought by H. A. Stevens are affirmed. The order and judgment appealed from by the appellant E. S. Woodworth & Co., No. 7497, are reversed.

POLLEY and ROBERTS, JJ., concur.

RUDOLPH, P. J., and CAMPBELL, J. (dissenting). It is our opinion the evidence does not warrant a recovery against either defendant. We therefore dissent from that portion of the opinion allowing a recovery against defendant Stevens.