EVA M. SHAW, ADMINISTRATRIX ESTATE OF JOSEPH SHAW
*vs.*
MARIA PIEL.

Somerset.    Opinion, July 15, 1942.

*Locke, Campbell & Reid,*

*James L. Reid,* for plaintiff.

*Berman & Berman,* by *David V. Berman,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORS-
TER, MURCHIE, JJ.

MANSER, J.   On April 28, 1939, Joseph Shaw received bod-
ily injuries by falling through a trap door in a building on
premises owned by the defendant. From these injuries he died
six months later. This action is brought by the Administratrix
of the decedent's estate for resulting damages to him, recovery,

if any, to be first for the benefit of the North Anson Reel Co., employer of the decedent, in so far as it was entitled thereto under subrogation rights provided in the Workmen's Compensation Act, R. S., c. 55, § 24.

The case comes up on exceptions by the plaintiff to the direction of a verdict for the defendant by the presiding Justice and to the exclusion and admission of certain evidence.

If the evidence in the case would have warranted the jury in returning a verdict for the plaintiff, the exceptions must be sustained. When fairminded and unprejudiced persons may reasonably differ in the conclusions to be drawn from undisputed facts, the question is one of fact for the jury. *Patten* v. *Field,* 108 Me., 299, 81 A., 77.

The facts, which may be regarded as undisputed, are as follows:

Shaw and one Hinman were on a business trip for their employer, undertaking to procure orders for its products from such persons as might be interested therein and in need thereof. The merchandise handled by the employer included building supplies, materials and paints. The defendant owned a residential estate of considerable area with a main house, several other buildings and a greenhouse. The men drove upon the premises at about noon time, went to the house and inquired of the woman who came to the door as to the man in charge of the estate. They were informed that he was then absent but was expected to return soon. Waiting in their own car in the driveway, they saw another car enter the premises and proceed to the rear of the house. Upon renewed inquiry, they learned from the same woman that probably the arrival was the man for whom they were looking, and that he might be at the greenhouse, and they were informed as to its location. They went in that direction by a well defined path, and were again told by a workman outside the greenhouse that the man they wanted, a Mr. Lange, was inside. There was attached to the greenhouse a small wooden building, through the door of which Hinman entered, expecting that Shaw, who had stopped ap-

parently temporarily, would follow him. Hinman proceeded down a pathway in the center of the wooden building and successfully passed a square opening or hole from which a trap door had been lifted, and which was unprotected by guard rails, although such safety appliances were there and presumably available for use. Hinman engaged in conversation with Lange concerning the products he had for sale, and was asked as to some special paints for the greenhouse. To this Hinman replied that Shaw had a booklet listing many such paints and could give the necessary technical data relating thereto. At that moment Shaw entered the building, stepped forward about six feet and fell through the hole. The injury did not at first appear serious, and before taking Shaw to his home, Hinman continued his negotiations with Lange and took an order for some paint, linseed oil and turpentine, which was later delivered and payment received:

The questions involved as to liability of the defendant for the damages resulting from the injury were:

Was Shaw a trespasser, a licensee or an invitee at the time of the accident?

Was there violation of any legal duty owed to Shaw by the defendant?

Was Shaw himself guilty of contributory negligence?

Should a verdict have been directed for the defendant upon the ground that no liability existed as a matter of law?

As to the status of Shaw at the time of the accident, the general legal principles have been definitively applied by our Court in a succession of decisions that, if a person goes upon property of another as a trespasser, he is there without right and is bound to accept the existing situation. If he is allowed to go there for his own interest or convenience, he is a mere licensee and the owner owes him no duty except not to wilfully cause him harm. If he is there by invitation of the owner, then

it is the duty of the owner to maintain the place in a reasonably safe and suitable condition.

An invitation may be express or implied. When the owner in terms invites another to come upon his premises, the invitation is express. An invitation is implied in behalf of one who enters the premises of another in pursuance of an interest or advantage which is common or mutual to him and the owner. *Parker* v. *Publishing Co.*, 69 Me., 173, 31 Am. Rep. 262; *Dixon* v. *Swift*, 98 Me., 207, 56 A., 761; *Russell* v. *M. C. R. R.*, 100 Me., 406, 61 A., 899; *Stanwood* v. *Clancey*, 106 Me., 72, 75 A., 293, 26 L. R. A., N. S., 1213; *Patten* v. *Bartlett*, 111 Me., 409, 89 A., 375, 49 L. R. A., N. S., 1120; *Austin* v. *Baker*, 112 Me., 267, 91 A., 1005, L. R. A., 1916F, 1130; *Robinson* v. *Leighton*, 122 Me., 309, 119 A., 809, A. L. R., 1386; *Foley, Malloy* v. *Farnham*, 135 Me., 29 at 34, 188 A., 708.

The opinion in *Carleton* v. *Franconia Co.*, 99 Mass., 216, puts it thus:

> "The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist and has given them no notice of."

This statement of principle is quoted with approval by our own Court in *Moore* v. *Stetson*, 96 Me., 197, 203, 52 A., 767.

In somewhat different phraseology, the rule is given in *Sweeny* v. *Railroad Co.*, 92 Mass., 368 at 374, 87 Am. Dec., 644, as follows:

> "A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for

such use, and for a breach of this obligation he is liable in damages to a person injured thereby."

More directly as to the situation here involved is the statement of principle as given in 38 Am. Jur., Negligence, #121:

"a person who goes upon premises for the purpose of transacting business with the owner or occupant is, in the absence of circumstances indicating the contrary, entering for a purpose which is of advantage, or at least of sufficient interest, to the owner or occupant that the entry can be said to be invited impliedly by the latter."

It has been said that precisely how far, under all circumstances, an implied invitation extends, with reference to the persons to be included in it is hardly capable of exact statement. *Plummer* v. *Dill*, 156 Mass., 427, 31 N. E., 128, 32 Am. St. Rep., 463.

Under the circumstances of the present and like cases, when the premises are not occupied as a general place of business where people may be expected to go on matters of mutual advantage to the occupier and the visitor, the rule as to implied invitation should be reasonably interpreted as of somewhat more limited application. On such premises the caller is no more than a licensee until the occupier or his representative expresses or indicates a willingness to consider, discuss or negotiate with such caller respecting matters of common interest. *Lanstein* v. *Acme Works*, 285 Mass., 328, 189 N. E., 44.

That there was mutuality of interest here, and the recognition of Shaw as an invitee, the plaintiff asserts is supplied by the evidence that Shaw and Hinman were engaged in the common purpose of selling paint and building materials, that Hinman had engaged in conversation with Lange, that the jury under the evidence would be justified in finding that Lange was in charge, for the owner, of such matters, that inquiry had been made by Lange as to some special paint for the greenhouse, that Hinman had stated Shaw had the particular

information, and a sale was consummated as a result of this visit. Further, that Shaw was known to be there and ready to furnish the information requested by the representative of the defendant.

This situation involved questions of fact, peculiarly within the province of the jury to determine. *Martin* v. *Eldridge*, 123 Me., 569, 124 A., 73.

One other question is discussed in the briefs as to the status of Shaw as affected by the directions given by the woman at the house and by a workman, concerning the whereabouts of Lange. It is urged by the plaintiff that the jury would be justified in assuming that the directions were given by persons with apparent authority to represent the owner and thereby the visitors became invitees. On the other hand, it is argued that no authority to change the status is indicated by such acts and even if authorized would not of themselves alter the legal relationship. If the case hinged on these incidents alone, the jury question, if any, would be very thin. The most that can be deduced is to negative any inference or assumption that either Shaw or Hinman were forewarned by these directions of any hazard which might lie in their pathway. The cases of *Denny* v. *Hotel Co.*, 282 Mass., 176, 184 N. E., 452, and *Lanstein* v. *Acme Works*, supra, are informative on the issue.

Upon the record in this case it cannot be held as a matter of law that Shaw was guilty of contributory negligence. The case starts with the presumption of due care in his favor. R. S., c. 96, #50, provides:

> "In actions to recover damages for negligently causing the death of a person, or for injury to a person who is deceased at the time of trial of such action, the person for whose death or injury the action is brought shall be presumed to have been in the exercise of due care at the time of all acts in any way related to his death or injury, and if contributory negligence be relied upon as a defense, it shall be pleaded and proved by the defendant."

Then it is not controverted in the present state of the record that in this small wooden building there was an open, unguarded trap door in Shaw's pathway, that other persons were in the building and beyond the opening, and that Shaw had no knowledge or warning of the condition as he entered. That Hinman had successfully avoided the peril, although evidential, is not necessarily controlling. It might be reasoned that, seeing him at the other end of the room, intuitively gave Shaw a sense of security. There were conditions as to light, upon the determination of which reasoning minds might differ. It is claimed that outdoor there was snow, with the sun shining thereon, while inside there was semi-darkness; that the gaping hole was within six feet of the entrance, and that this raised a question as to adjustment of vision to the changed conditions. All these constitute issues of fact which were not for the Court to decide. We have no intention of expressing any opinion thereon, but it was the province of the triers of fact to determine them. They might have found that there was an obvious, apparent condition clearly visible to one of ordinary powers of observation, to which the defense of contributory negligence would have application, but the record does not conclusively require them to do so.

It is claimed in the defendant's brief that the cases of *Dixon* v. *Swift*, 98 Me., 207, 56 A., 761, and *McClain* v. *National Bank*, 100 Me., 437, 62 A., 144, are determinative upon the point. The first of these cases, however, was before the Court upon report, which made it the duty of the Court to decide the facts as well as the law. Even so, an analogous, factual situation was not presented. In the second case, it was determined that the plaintiff was at best a mere licensee and not an invitee, and while the Court perhaps unnecessarily passed on the question of due care on the part of the plaintiff, this, too, was essentially different in the circumstances described.

It being the duty of the Court to sustain the exception to the direction of a verdict, the other exceptions as to exclusion or admission of testimony becomes innocuous and academic.

They require no determination, as in this situation they affect neither party and the plaintiff is not thereby aggrieved.

*Exception to direction of verdict sustained.*