# JOHN JOHNSON v. FRANK B. SPEAR.

*Master and servant—Negligence—Duty as to appliances—Liability to servants of contractor*

1. The *owner* of a coal-dock who contracts for unloading coal during the season of navigation at a specified price per ton, and to furnish the contractor a stationary engine upon the dock, and the appliances connected therewith, including the chain attached to the buckets in which the coal is hoisted from the vessels to the dock (under which ascending buckets the contractor's employés are obliged to work during the early part of such unloading), which contract is silent as to repairs, is charged with the *duty* of examining and inspecting such engine and appliances, and is liable for any injury resulting to said employés by reason of the weak and worn condition of said chain, if he *knows*, or *could* know by such inspection, of its insufficiency.

2. The following propositions are summarized from the opinion of Mr. Justice CHAMPLIN:

    *a*—As between the employér and his employés, it is the duty of the master to *furnish* suitable machinery, and see that it is *kept in repair*, and he is bound to exercise *reasonable* care to prevent accidents; which care necessarily has relation to the *parties*, the *business* in which they are engaged, the *wear* and *tear* upon the machinery, and the varying exigencies which require *vigilance* and *attention* conforming in *amount* and *degree* to the circumstances of each particular case.

    *b*—It is not necessary, in order to recover for injuries resulting from defective machinery, that the master had *actual* knowledge of such defects, but it is enough to show such facts and circumstances to exist, that, if he had exercised *reasonable* care and diligence, he would have ascertained its true condition by examination and inspection.

Error to Marquette. (Grant, J.) Argued June 13, 1889. Decided July 11, 1889.

Negligence case. Plaintiff brings error. Reversed. The facts are stated in the opinion, as also the points of counsel passed upon by the Court.

*Hayden & Young,* for appellant.

*Ball & Hanscom,* for defendant.

CHAMPLIN, J.   Johnson was injured while unloading coal from a vessel moored at defendant's dock.

The defendant owns a coal-dock in the city of Marquette, and during the season of navigation large quantities of coal are unloaded thereon from vessels.   The vessel crews have nothing to do with unloading the cargoes, which was done by means of a small engine and apparatus belonging to defendant, placed on the dock, and operated by an engineer employed by defendant, by means of which large iron buckets loaded with coal in the hold of the vessel were hoisted out of the hold, elevated to a platform, and dumped into barrows, and wheeled to different places upon the dock.

With the engine, and as a part of the appliance used for hoisting coal, and furnished by defendant, was used a chain about 30 feet long.   The links were from $\frac{5}{8}$ to $\frac{3}{4}$ inch round iron when the chain was new.   One end of the chain was made fast to a drum, the other end being fastened to a rope, which ran through pulleys fastened to blocks in the rigging of the vessel, nearly over the hatchways, and to this rope the buckets were attached, which were filled in the hold of the vessel, and drawn up by the engine to the platform.

The chain would be alternately wound about the drum and unwound in the work of hoisting and lowering the buckets.   The weight of a bucket filled with coal is about 250 pounds.

For the last five years the defendant has unloaded at his dock 10,000 tons of coal a year.   For the season of 1887 the defendant had a verbal contract with one George Watkins for unloading coal.   The defendant testified that—

" The terms of the contract were: Twenty-one cents a ton on coal taken from the vessel and put on the dock,—shoveled,

hooked on, dumped, and wheeled, and put on the dock at my satisfaction,—and twenty-five cents a ton on brick. That is all there was to the contract. I furnished engine, wheel-barrows, planks, platform, and horses. He furnished the shovels. The engine and drum included the chain also. Mr. Watkins hired the men necessary to do the work."

Mr. Watkins also testified that the terms of the contract were that Mr. Spear should furnish engine, wheelbarrows, planks, and everything except shovels. He (Watkins) hired his own men and discharged them.

It appears that Mr. Berry, the engineer, worked for Mr. Spear, who also employed a foreman by the name of Taylor, to see that the work was properly done, but he had nothing to do with the men in unloading. Nothing was said in the contract between Mr. Spear and Mr. Watkins as to who should keep the apparatus used for hoisting in repair and fit for use. Mr. Spear testified that it was his place to buy new chains when the old ones were worn out; that he was to be notified of the need by the contractor; that contractors had nothing to do with the buying of chains; that he received no notification from his contractor previous to the time of this breakage that a new chain was needed, and had no knowledge of any defect in this chain which would render it insufficient for the business for which it was used.

It appeared upon cross-examination that he had bought five new chains, and never but one personally. The others were bought upon the judgment of his foreman, and when-ever he thought it necessary for safety He also testified upon cross-examination as follows:

'When the chain was mended, I presume, the price of mending was charged to me. When a new chain was got, the price was charged to me."

The bearing of this testimony will become evident when the plaintiff's claim is considered. He claims that he was in the hold of a vessel, shoveling coal into a bucket, when, in drawing up or hoisting the bucket, the chain broke, and the

bucket fell into the hold, and injured him. He claims that the chain was so worn as to become weakened and dangerous for the purpose, and that it was the defendant's duty, not only to furnish in the first instance safe machinery and appliances to do the work of hoisting, but it was his duty to inspect the machinery and appliances, and see that it remained safe and sufficient for the use to which it was applied; that the defendant neglected this duty, and by reason of such neglect the plaintiff was injured.

The plaintiff was not employed by the defendant. He was employed by Watkins. The relation of master and servant did not exist between them, and the plaintiff cannot predicate a right of action based exclusively upon that relation. As between the employer and his employés, it is the duty of the master to furnish suitable machinery, and to see that it is kept in proper repair, and he is bound to exercise reasonable care to prevent accidents. His duty is not discharged by furnishing suitable machinery and appliances in the first instance, and fit and proper for carrying on the business, but he is in duty bound to see that they are kept so. He must exercise reasonable and proper watchfulness as to their condition, and guard against dangers liable to arise from ordinary wear and use from which they may become weakened or unfit for the purpose for which they are supplied.

The care required necessarily has relation to the parties, the business in which they are engaged, the wear and tear upon the machinery, and the varying exigencies which require vigilance and attention conforming in amount and degree to the circumstances of each particular case. It is not necessary, in order to recover for injuries arising from defective machinery, that the master had actual knowledge of such defects, but it is enough to show such facts and circumstances to exist that, if he had exercised reasonable care and diligence, he would have ascertained its true condition by examination and inspection. In such case it is said that

he ought to have known its condition, and he is held to be as equally liable as if he had known it.

Under the contract between defendant and Watkins it was the duty of defendant to exercise supervision over the engine and its appliances for hoisting, and to inspect its condition, and keep it in a condition so that it would be safe for use in the business of unloading vessels.

The principles above enunciated apply to the relation of master and servant. It does not follow, however, that the defendant is not liable for injuries which may be received by those persons employed by his contractor to unload vessels at his dock. If the injuries result from the negligence of the defendant while work is being done upon his premises, and through his fault in not keeping them in a suitable and safe condition, he is liable to any servants of the contractor for injuries resulting to them from defects therein; not because there is any contract obligation between the parties, but arising out of his obligation or duty to provide safe appliances for the servants of the contractor to use, and to keep his premises upon which such servants are at work in a reasonably safe condition, whether the contract provides for it or not. Wood, Mast. Serv. p. 699, § 337; *Coughtry v. Globe Woolen Co.*, 56 N. Y. 124; *Bower v. Peate*, L. R. 1 Q. B. Div. 321, 328.

The contractor, in this case, was employed to do a particular job, continuing throughout the season of navigation, namely, that of unloading coal at 21 cents a ton. The defendant furnished the outfit, which included a stationary engine upon his premises, and the appliances connected therewith, in hoisting the coal from the vessels to his dock. The circumstances left the proprietor charged with the duty which regularly attached to him to see that the machinery and appliances so furnished did not endanger the safety of others. Indeed, it could not well be otherwise. It certainly was not the duty of the contractor to repair the engine or

machinery, or to buy new chains or ropes to take the place of such as should wear out or become defective; and if it was not the contractor's duty to repair or buy new machinery, and if the duty did not rest upon the proprietor, there would be no remedy for injuries occurring through defects and unfitness of the engine and appliances used in unloading coal for defendant at his dock. The proprietor cannot thus relieve himself from the responsibility. *Mulchey v. Methodist, etc., Soc.*, 125 Mass. 487 (6 Reporter, 751).

It is analogous to that class of cases where the owner of real property is held liable to any one who, expressly or impliedly invited upon his premises, is injured by a concealed defect thereon. *Elliott v. Pray*, 10 Allen, 378; *Gilbert v. Nagle*, 118 Mass. 278; *Pickard v. Smith*, 10 C. B. (N. S.) 470; *Holmes v. N. E. Ry. Co.*, L. R. 4 Exch. 254; *Powers v. Harlow*, 53 Mich. 514 (19 N. W. Rep. 260); *Samuelson v. Cleveland Iron Mining Co.*, 49 Id. 164, 170 (13 N. W. Rep. 499); *McKone v. Mich. Cent. R. R. Co.*, 51 Id. 601 (17 N. W. Rep. 74); *Bennett v. Railroad Co.*, 102 U. S 580.

The circuit judge charged the jury as follows:

" Under this contract the defendant, Spear, agreed to furnish the hoisting apparatus and certain tools, and Watkins to furnish the rest. Among the things that defendant was to furnish was this hoisting apparatus, consisting of an engine, drum, chain, and rope. Under this contract it was the duty of the defendant in the first instance to provide a chain,—for that is all we need to consider in this case; the other machinery is not found fault with,—it was his duty to furnish a chain which was reasonably safe for the business it was called upon to do. When the defendant, Spear, had done that, he had discharged his duty under the contract between him and Watkins, and towards Watkins' employés. Then the defendant, Spear, was not liable for an accident that resulted from a defect in the chain, provided that it was proper in the beginning, until he was notified that there was a defect in the chain which rendered it unsafe, or, in the absence of notification, until he had actual knowledge that such was the case, for actual knowledge will take the place of any notification from anybody."

I think the court erred in laying down the law as to the extent of the defendant's duty towards persons not in contract relations with him, but who not only had a right to be upon his premises, but who the defendant knew, from the nature of the business which he contracted with Watkins to do, must be employed upon his premises. He knew also that the work they were employed to do was dangerous, unless the machinery and appliances which he owned and furnished were kept in good repair, and free from defects which impaired their strength. He knew that in unloading 10,000 tons of coal a year the chain would have to be wound and unwound at least 80,000 times if unloading from a single hatch, and 40,000 times unloading from two hatches at the same time. He knew that this constant friction would wear the chain, and the longer it was used the weaker it would get. He testified to there having been five new chains purchased, and there was testimony that on account of the action of the waves, or the listing of the vessel, the buckets were liable to catch upon the hatch or plank of the platform as they were being hoisted, and the chain would be subjected to a strain many times greater than the weight of the coal; and the testimony showed that there had been frequent breakages of the chains used from some cause. Indeed, the frequent purchases of new chains afford strong inference that on account of the wear and use they had become unfit for the service with safety.

The testimony also showed that, in the ordinary work of unloading, the men were obliged to work during the early part of the unloading directly under the ascending buckets, and the nature of their employment and the requirements of their employers would not permit them to stand and watch the ascending bucket until it was safely landed upon the platform, or its contents emptied. Consequently their position was one of danger, unless the machinery and appliances for hoisting were kept safe. Under these circumstances, I

76 MICH.—10.

think the duty of examination and inspection rested upon the defendant, and that he would be liable if he knew, or could have known by inspection, of the weak, worn, and insufficient condition of the chain, through which an injury resulted to the men engaged in unloading the vessel.

The judgment must be reversed, and a new trial granted, with costs of both courts.

SHERWOOD, C. J., and LONG, J., concurred. MORSE, J., did not sit.