MICHEL PIETTE v. THE BAVARIAN BREWING COMPANY.

| 91  | 605  |
| 112 | 622  |
| 91  | 605  |
| s52NW | 152 |
| 129 | 390 |
| 91  | 605  |
| 136 | s114 |

*Negligence—Defective appliances—Fellow-servants.*

1. Plaintiff's employer had contracted to fill defendant's ice-house, and to that end to use a hoisting apparatus furnished by the defendant. Plaintiff was injured by an ice bucket falling upon him by reason of the breaking of a wire cable attached to the buckets. And it held that defendant's duty was discharged when it furnished the hoisting apparatus in a. reasonably safe condition, and that it cannot be held responsible for injuries to plaintiff resulting from the improper management of the apparatus by plaintiff's fellow-servants.

2. The fact that the relation of master and servant did not exist between the plaintiff and defendant will not prevent a recovery by the plaintiff.

3. A danger which exists only because of defective appliances, of which an employé has no notice, cannot be said to be one of the risks assumed by the employé.

4. Where a corporation succeeds to the business of a copartnership, which it continues, and assumes the contracts and obligations of the partnership, it is liable to the same extent as the copartners would have been for a failure to furnish suitable machinery to a contractor under one of said firm contracts.

Error to Wayne. (Brevoort, J.) Argued April 8, 1892. Decided May 13, 1892.

Negligence case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Edwin F. Conely* and *Orla B. Taylor* (*James H. Pound,* of counsel), for appellant.

*W. F. Atkinson,* for defendant.

McGRATH, J. In September, 1885, Messrs. Michenfelder and Ratigan, who were then carrying on business as brewers, made a contract with one Jubilo to cut and haul their ice, and fill their ice-house. In December, 1885, and before the work had been commenced under said contract, Messrs. Michenfelder and Ratigan, with others, organized the defendant company, and the business was afterwards carried on in the name of the Bavarian Brewing Company. Michenfelder was its president, and Ratigan its secretary. The ice was hoisted into the ice-house by means of a stationary hois'ing apparatus, owned by the company, and it was a part of Jubilo's work, under his contract, to hoist the ice by means of this apparatus, and pack it away in the ice-house. This apparatus was operated by horse power. The cut on next page will aid in its explanation.

B and B represent the buckets. A wire cable extended from the top of one bucket to the top of the other, and a manilla rope extended from the bottom of one bucket to the bottom of the other. The pulley at the left was attached by the rope "F" to a stake, so that while in operation

the cable and rope were drawn taut.    The horse was
attached at the point "C," and pulled either way, accord-
ing to which bucket it was desired to hoist.    The buckets
dropped into wells which were let into the platform on either
side, so that the ice might be loaded without lifting.
The rope ran through a hole in the bottom of each well,
and it became necessary to shovel out from these wells
the ice clippings as they accumulated from time to time.
This could only be done while the bucket was up.    Plaint-
iff was in Jubilo's employ, and, while engaged in cleaning
one of these wells, the cable parted, and the bucket fell,
injuring him severely.    Plaintiff sued, claiming that the
apparatus furnished by defendant was defective, and the
defendant had judgment.

It was insisted by defendant upon the trial—

1. That the immediate cause of the accident was the
negligence of a fellow-servant.

2. That plaintiff was negligent in getting into the well
to clean it out.

There was a succession of doors upon the outside of
the ice-house, and, as it was filled up, the lower door was
closed, and the next was opened.    In order to carry the
buckets higher, it became necessary to shorten the wire
cable between the buckets.    This was done by means of
a wrench or crank at the point "R."    While plaintiff
claimed that a number of strands of the wire cable were
actually eaten off by the rust, and that the remaining
strands were weakened and rotten from the same cause,
and that the cable would not have parted except for that
reason, the defendant claimed that, while plaintiff was
engaged in cleaning out the well, two of Jubilo's em-
ployés, who were plaintiff's fellow-servants, were operat-
ing the crank at the point "R," and had not taken the
precaution to lengthen or loosen the rope, and that, in

consequence of the unusual strain upon the cable, it parted.

The testimony was conflicting upon this point, but there was no error in the court's instruction to the jury that—

"If the injury was caused by the attempt of the fellow-servant to shorten the wire rope without lengthening the manilla rope, then the plaintiff cannot recover."

The testimony tended to show that, unless the proper slack was given to the rope at the point "F," the man at the crank would exert a lifting power or strain upon the cable of 2,400 pounds. The cable had been in use, and had stood the strain of that use; and while it is true that it may have been giving way during that use, and that the shortening of the cable was the last straw, yet if plaintiff's co-employés, without giving the necessary slack to the rope "F," were, at the time of the accident, operating the crank or lever, and exerting the aforesaid strain upon the cable, that must be said to be the proximate cause of the accident, and plaintiff cannot recover. Defendant could not be held liable for injuries resulting from either the inexperience or negligence of Jubilo's employés. Its duty was discharged when it furnished the hoisting apparatus in a reasonably safe condition. Jubilo undertook its operation, and defendant cannot be held responsible for injuries resulting from improper management.

Upon the second point the testimony was conflicting as to the necessity for getting into the well or box, in order to clean it out. The well was some four feet square. The rope ran through its center. There was an opening upon one side from which it was claimed by defendant that it could be cleaned. It was cleaned with an ordinary shovel. Testimony was offered tending to

91 MICH.—39.

show that, to do the work promptly and properly, it was necessary to get into the well, and that the work was usually done in that way. Plaintiff cannot be said to have been negligent because he did not anticipate that defendant had furnished a defective apparatus. The court was in error, therefore, in the instruction given to the jury that—

"If the plaintiff, without orders from any person, put himself in danger by getting into the box when he could have done the work of cleaning without getting in there, he cannot recover."

In any event, under the testimony, the question was one of fact for the jury, and not one of law for the court.

Nor was the danger from the falling of the bucket caused by defective appliances one of the risks incident to plaintiff's employment. The risks incident to an employment, and which an employé assumes, are those which are inseparable from the employment, and which the exercise of ordinary care on the part of the employer in the selection, use, and operation of appliances cannot avoid. A danger which exists only because of defective appliances, of which an employé has no notice, cannot be said to be one of the risks which the employé assumes. The court erred, therefore, in instructing the jury that—

"The law presumes that every person who accepts employment does so with the risks incident thereto."

The repeated instruction to the jury that the relation of master and servant did not exist between defendant and plaintiff was misleading. It is not necessary that such relation exist in order to entitle plaintiff to recover. *Johnson v. Spear,* 76 Mich. 139.

The court further instructed the jury—

"That this Bavarian Brewing Company was made a

company on the 10th day of December, 1885, and unless you find that after the 10th day of December, 1885, and before plaintiff was hurt, that is, on the 15th day of January, the contract was entered into, wherein this company was to furnish machinery by which the plaintiff's employer, Jubilo, was to put up this ice, then your verdict will be for the defendant."

The defendant company continued the business which had been carried on by Michenfelder & Co. Mr. Ratigan testified that the contracts made by the old firm were carried out by defendant; that everything went on just the same; that the consideration for Jubilo's work under this contract was paid by defendant; and that the obligations of Michenfelder & Co. were assumed and paid by defendant. Under these circumstances, defendant stood in the shoes of Michenfelder & Co., and the instruction was erroneous.

The judgment is reversed, and a new trial ordered, with costs to plaintiff.

MORSE, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.