129    385
s89NW   39
s133   553

## McINTYRE *v.* DETROIT SAFE CO.

1. NEGLIGENCE—DANGEROUS PREMISES—PLATFORM SCALE—INSPECTION—QUESTION FOR JURY.

Plaintiff, pursuant to his employer's undertaking with defendant, was engaged in hauling steel from a depot to defendant's premises, on which was a platform scale which defendant was accustomed to use. Plaintiff drove on the scale to have the steel weighed, as he had previously done, when the platform gave way, and he was injured. There was testimony tending to show that the timbers supporting the scale were rotten; and, while it appeared that the condition of the timbers could only be ascertained by taking the scale apart, defendant's contention that this had been done, and the timbers renewed, within such time as experience had shown it to be necessary, was disputed. *Held*, that the question of defendant's negligence was for the jury.

2. SAME—OVERLOADING SCALE.

Whether plaintiff overloaded the scale was also a question for the jury, the evidence being conflicting.

Error to Wayne; Donovan, J. Submitted November 22, 1901. Decided February 11, 1902.

Case by John McIntyre against the Detroit Safe Company and the Pfaudler Vacuum Fermentation Company for personal injuries. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Reversed.

*Tarsney, Hayes, Lawson & Fitzpatrick*, for appellant.

*Gray & Gray* (*Edwin F. Conely*, of counsel), for appellees.

MOORE, J. This action is for the recovery of damages alleged to have been sustained by the plaintiff as the result of an injury suffered on the 14th of January, 1898. The defendants are corporations doing business in the city of Detroit. For many years before 1890, the Detroit Safe Company operated a large plant between Antoine and Beaubien streets. In 1896 the Pfaudler Company commenced to do business for themselves in Detroit. The buildings of the plant occupied by the defendants were separated by a private alley about 12 feet in width. Situated in this private alley, and near the Fort-street entrance thereof, was a large, 10-ton platform Fairbanks scale, which was used originally by the defendant safe company in its business, and latterly by both defendants. The platform of the scale was 16 feet long and about 9 feet wide. After the Pfaudler Company located in Detroit, it occupied that part of the old safe company's plant lying to the east of the private alley, the safe company continuing to keep that part lying to the west side of the alley. The scales were erected in 1889 or 1890. The beam of the scale is inside that part of the plant occupied by the safe company. At the time of the accident, the Pfaudler Company was the owner of the land upon which the entire plant was built. It is claimed by the defendant Pfaudler Company that, on the purchase of that part of the safe company's plant used in their business, they bought everything in the way of machinery in the building, tools, etc., but that they did not buy the scales. The

scales do not appear to have been excepted from the terms of the transfer. Mr. Paige, the treasurer of the safe works and manager of the Pfaudler works, says that the Pfaudler Company did not purchase the scales, "simply because they belonged to the safe company, and the beam was in their office, and nothing was said about the scales at all." The Pfaudler Company had the use of the scales, and they were used by it to weigh what was sought to be weighed in this case, the safe company consenting to the use of the scales by the codefendant.

On the morning of January 14, 1898, the plaintiff and one George Morton, teamsters in the employ of the Shedden Cartage Company, hauled a load of steel from the Lake Shore depot to the plant of the Pfaudler Company. The load consisted of 20 sheets of pressed steel 23 feet $9\frac{1}{4}$ inches long, and with a combined weight of 14,000 pounds. The truck and equipage weighed, one witness says, about 4,000 to 5,000 pounds, while a witness for plaintiff says it weighed 2,200 or 2,300 pounds. Plaintiff had hauled similar material to the premises of the Pfaudler Company before this time, where it was weighed upon the same scales. He drove his load upon the scales. The scales gave way at the southwest corner, causing the sheets of steel to slide from their places, and the plaintiff was caught between the steel and the building of the safe company, and was severely injured. It is claimed on the part of the plaintiff that the timbers used in the construction of the scales had rotted, allowing one of the bolts which sustained the platform of the scales to pull through; and that defendants, by a proper inspection, would have learned of the defect, and it was negligent in them to allow plaintiff to drive on the scale under the circumstances disclosed by the record. It was the claim of the defendants that, if there was any defect, it was a hidden one. It is also claimed the scales were overloaded; that the load was not properly placed on the scales. The circuit judge directed a verdict in favor of the defendants. The plaintiff has brought the case here by writ of error.

The plaintiff insists that, as he was engaged upon the premises at the invitation of the defendants, for the purpose of weighing steel belonging to the Pfaudler Vacuum Fermentation Company, it was the duty of the defendants to see that the premises and appliances used were in a reasonably safe condition. The defendants admit that ordinarily, if there was a known defect, the defendants would be liable, unless the plaintiff was warned of the danger; but they insist there was no defect known to the defendants, and none they had reason to anticipate.

The testimony was conflicting. The witnesses for plaintiff testified that the timbers of the scale were rotten, and because of this the bolt head pulled down into the timber. The testimony on the other side tended to show there was no decay in the timber. The evidence discloses these scales were set in a pit dug in the ground. In the four sides of the pit was built a stone wall, with pockets in it, into which the ends of the levers which supported the platform could be passed and attached to bolts, which ran up through heavy timbers, which were placed on top of the wall. On the top of the timbers was a heavy planking, and upon the top of the platform there was also heavy planking, the top of the scales coming a little above the surface of the ground. This structure was exposed to the weather and to the influence of the earth coming against the sides of the timbers. It is evident the timbers were subjected to more or less moisture, which would have a tendency to cause decay.

In *Morton* v. *Railroad Co.*, 81 Mich. 423 (46 N. W. 111), it is said:

"The rule may now be considered settled in this State, as well as in most of the States, not only that a master is bound to use all reasonable care in providing safe tools and appliances for the use of workmen in his employ, but that this is a duty which cannot be delegated to another so as to relieve him from personal responsibility. *Johnson* v. *Spear*, 76 Mich. 139 (42 N. W. 1092, 15 Am. St. Rep. 298); *Van Dusen* v. *Letellier*, 78 Mich. 492 (44 N. W. 572); *Brown* v. *Gilchrist*, 80 Mich. 56 (45 N. W. 82, 20

Am. St. Rep. 496). The duty of the master to his employé in this respect is clearly and well stated by Mr. Justice MORSE in *Van Dusen* v. *Letellier*, just cited, at page 502:

" 'It is well settled by all the authorities that the master must provide his servant with a safe place to work in, and furnish him with suitable machinery and appliances with which to perform such work, and it is his duty to keep such machinery and appliances in good repair. If he cannot do this himself personally, he must provide some other person to take his place in this respect; and the person to whom the master's duty is thus delegated—no matter what his rank or grade; no matter by what name he may be designated—cannot be a servant in the sense or under the rule applicable to injuries occasioned by fellow-servants. Such person is an agent, and the rules of law applicable to principal and agent must apply.'

" This doctrine is also clearly stated by Justice Field in *Northern Pacific R. Co.* v. *Herbert*, 116 U. S. 650 (6 Sup. Ct. 590), where the whole question is carefully discussed, and numerous authorities in New York, Massachusetts, Maine, and other States to the same effect discussed and approved. Four of the judges dissented from his opinion upon the ground that the case was governed by a special statute in Dakota, but expressed no opinion as to the common-law liability of the defendant under the circumstances of that case.

"In 1 Shear. & R. Neg. (4th Ed.) §§ 194, 204, this question is discussed and stated as follows:

" 'SEC. 194. The master also personally owes to his servants the duty of using ordinary care and diligence to provide for their use in his service sound and safe materials, instruments, and accommodations, and such appliances as are reasonably calculated to insure their safety. He is also personally bound to inspect and examine all these things from time to time, and to use ordinary care and skill to discover and repair defects in them.'

" 'SEC. 204. None of the duties which have been previously stated as devolving upon the master personally can be by him delegated to any agent so as to relieve him from personal responsibility. He may, and often must, delegate the performance of such duties to subordinates; but he remains responsible to all his servants for the acts of these subordinates in that particular capacity to the same extent as if those acts were literally his own.' "

See, also, *Tangney* v. *J. B. Wilson & Co.*, 87 Mich. 453 (49 N. W. 666).

It is urged on the part of defendants that:

"Inasmuch as plaintiff came upon the scales by the invitation of the Pfaudler Company, and simply by the license of the safe company, the plaintiff was a mere licensee. A mere licensee takes property in its existing condition, and the owner is not required to exercise that care which is demanded in the case of those who come upon the premises by invitation, expressed or implied. To the trespasser the owner owes no duty whatsoever, and the latter, who comes upon the premises in bad faith, has no relief against injury from a spring gun, trap, or other concealed danger. A licensee, who comes upon the premises with the permission of the owner, is entitled only to this additional protection: That he shall be warned of any positive danger from things which have been placed on the property by the owner; but the owner does not owe him any duty to keep his premises, or any part of it, in good repair."

The record does not show in a very satisfactory way just what the respective rights of the two defendants were in the scales, and the judge did not permit that phase of the case to go to the jury, so that we are without aid from them as to how they viewed the question of fact relating to ownership. It is quite clear from the testimony that at least one of the defendants invited the cartage company, for whom the plaintiff was at work, to do the weighing of the steel upon the scales. Certainly the duty of inspection and repairing was not upon the Shedden Cartage Company. The principle involved is so fully discussed in *Johnson* v. *Spear*, 76 Mich. 139 (42 N. W. 1092, 15 Am. St. Rep. 298), it is not necessary to repeat the discussion here. See same case, 82 Mich. 453 (46 N. W. 733); *Piette* v. *Brewing Co.*, 91 Mich. 605 (52 N. W. 152).

The question as to whether the scales were overloaded or improperly loaded was for the jury.

Judgment is reversed, and new trial ordered.

MONTGOMERY, J., concurred with MOORE, J.

GRANT, J. (*concurring*). The principles of law in this case are not much in dispute. The duty of an employer,

or of a person inviting others upon his premises to perform labor, to properly inspect the machinery and appliances, and to provide a reasonably safe place for such work, is admitted. If the premises assumed by the circuit judge in his instruction to the jury in directing a verdict were true, his conclusion that there was no liability on the part of the defendants, or either of them, would have been correct. He assumed that the scales were repaired and new beams put in only four years before the accident, and that four years, under the evidence, was not sufficient to work a change in the timber, and render it dangerous. Under his assumption and statement of facts the case would fall clearly within *Quincy Mining Co.* v. *Kitts*, 42 Mich. 34 (3 N. W. 240). An inspection could not be made without removing the platform and taking the scales entirely apart. This the defendants would not be required to do within such a time as experience had shown that timbers could reasonably be expected to last without decay so as to become dangerous. In other words, the law requires no inspection where common experience has shown that there is no occasion to inspect. In *Quincy Mining Co.* v. *Kitts* it was established beyond controversy that the timber was sound when put in, and that, according to experience, it should have lasted several years longer than it did.

The difficulty with the instruction of the judge is in assuming that the testimony conclusively established that the timber had been in only four years. The testimony on the part of the defendants alone is not sufficient to establish that fact. The testimony on which defendants rely is that of Mr. Marschner:

"*Q.* When did you first do any work on the platform scales in their present position?
"*A.* I think it was in 1894,—something like that. I really could not say."

Such testimony could not be held to conclusively establish the fact that the repairs were made in 1894. Besides, one witness testified that he thought the scales had been

in use 12 or 15 years without anything being done to them. If, upon the trial, it should be conclusively established that the defective timber which caused the accident was put in new in 1894, was then apparently sound, and should, according to experience, have lasted, without danger, longer than four years, the defendants would have established a complete defense. This was the pivotal question in the case, and the one upon which the judge decided it. For these reasons I concur in the reversal of the judgment.

HOOKER, C. J., concurred with GRANT, J.
LONG, J., took no part in the decision.