## OUELLETTE *v.* MICHIGAN ALKALI CO.

MASTER AND SERVANT — DEFECTIVE APPLIANCES — INSPECTION — QUESTION FOR JURY.

Plaintiff, an employé of defendant, was injured while at work on a derrick, by the giving way of a board of which he was obliged to take hold, and which his testimony tended to show was rotten. The derrick was a comparatively frail structure, exposed to the elements, and had been erected about four years. There was no evidence of any inspection by the master. *Held*, that the case was one for the jury. GRANT, J., dissenting.

Error to Wayne; Hosmer, J. Submitted December 12, 1901. Decided March 4, 1902.

Case by John E. Ouellette against the Michigan Alkali Company for personal injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*Gray & Gray* and *L. S. Trowbridge, Jr.*, for appellant.

*Thomas A. E. Weadock*, for appellee.

MOORE, J. The plaintiff recovered a judgment for personal injuries received by him while in the employ of defendant. The defendant has brought the case here by writ of error. The accompanying sketch will aid in understanding the situation.

When the accident occurred, the plaintiff was standing upon a crosspiece one inch by eight or ten inches wide, at a point where the lower star is. He was holding on at a point where the upper star is, with one of his hands, to a board one inch by six inches wide. His work required him to go to all parts of the derrick, supporting himself by standing upon and holding to any of the crosspieces in the derrick where he happened to be needed. His statement of the accident is as follows:

"March 19th, the day I was hurt, was a sort of cloudy day. I was sent up the derrick, and I was getting hold of the block, the single block, to pull it out of the derrick, —that is in the derrick,—and send it down to the ground to pull up some pipe in through the slot; and while I was holding on the derrick and reaching for my hook, with the other hand reaching for my hook, that board came away that I had hold of, causing me to fall to the roof of this building. From there I slid down and struck the ground. I fell from the roof of the building to the ground. I should judge it was about 15 feet from the place I fell to the roof of the building, and about 10 feet from the roof to the ground."

He also says the board which broke looked as if it was old,—as if it was rotten. His testimony, also, was that he had no knowledge of this defect until the accident happened.

On the trial a different version from that of the plaintiff as to how the accident occurred was given on the part of defendant by Mr. Gettleman, who said:

"At the time of the accident, I was running the engine myself. Ouellette went up the ladder until he got to the roof. Then he got onto the block,—gives himself a swing, so that, in getting up, he could land himself near the slot. He went from the roof onto the pulley block. The pulley was being raised into the air, going up slowly, and he went up with the pulley. He went up until his hands were about the top of the slot. He was swinging himself at the same time, so that he could take hold of that brace, and carry that or swing the block out through the slot and down to the ground. In swinging, he miscalculated his distance, and in grabbing for this girth he did not get it. He got below, and got hold of this brace, and pulled it off, and came down,—came down onto the roof, and onto the ground. When he came upon the braces, he came with a drop of about nine feet before he struck it, and the brace broke off, and then he fell to the roof."

In his charge to the jury the circuit judge told them, if they believed Mr. Gettleman's version of the transaction, plaintiff could not recover. He also told them if plaintiff, in going up and down the derrick, had seen the condition of the board, and knew or ought to have known of the risk he assumed, then he could not recover. He also charged the jury as follows:

"While the derrick in its inception was unquestionably fit and proper for work and for its employés, it may have become, by reason of the elements or by reason of something of that nature, unfit for the purpose and the safety of the employés. Now, you have heard the testimony in this case. You have heard the testimony of the plaintiff, who says he climbed up the ladder, and, from climbing up the ladder, he then went around to the slot, where he was to operate and put the block through the slot to take a pipe into the derrick itself. You have heard his testimony as to his taking hold of one of these crosspieces,—I don't know the technical term for them,—and that he took hold of that crosspiece, and, leaning out to reach for the rope, that the crosspiece came away, and so that he himself was thrown down to the roof of the shanty in the bottom of

the derrick, and from thence fell to the ground. Now, from that testimony, gentlemen of the jury, I think you may find that the company has not exercised that reasonable diligence that a company should exercise in the supervision of its structure, and that in their failure to discover a defect in the board you may find that they have been negligent, and that through this negligence, without fault on the part of the plaintiff, he received the injury in question."

It is said this was error, and that a verdict should have been directed for defendant. The record discloses the derrick was put up in 1896. It does not show that from then until the time of the accident any inspection was made of it for the purpose of determining whether the braces or other pieces of timber had become rotten and decayed, so as to make the structure unsafe for the employés whose duties required them to climb about the derrick. In *Johnson* v. *Spear*, 76 Mich. 139 (42 N. W. 1092, 15 Am. St. Rep. 298), it is said:

"As between the employer and his employés, it is the duty of the master to furnish suitable machinery, and see that it is kept in repair, and he is bound to exercise reasonable care to prevent accidents; which care necessarily has relation to the parties, the business in which they are engaged, the wear and tear upon the machinery, and the varying exigencies which require vigilance and attention, conforming in amount and degree to the circumstances of each particular case.
"It is not necessary, in order to recover for injuries resulting from defective machinery, that the master had actual knowledge of such defects, but it is enough to show such facts and circumstances to exist that, if he had exercised reasonable care and diligence, he would have ascertained its true condition by examination and inspection."

See, also, same case in 82 Mich. 453 (46 N. W. 733); *Van Dusen* v. *Letellier*, 78 Mich. 492 (44 N. W. 572), *Morton* v. *Railroad Co.*, 81 Mich. 423 (46 N. W. 111); *Tangney* v. *J B. Wilson & Co.*, 87 Mich. 453 (49 N. W. 666); *Ashman* v. *Railroad Co.*, 90 Mich. 567 (51 N. W. 645).

Since writing the foregoing I have been handed the opinion of Justice GRANT. I do not think the testimony warrants the inferences he draws from it. In the record the testimony appears in the narrative form, and not by questions and answers. I think it fairly appears from the testimony of the plaintiff that, when the accident occurred, the board was rotten and defective. Unless this court is to undertake to pass upon the credibility of witnesses, an issue of fact was raised between the plaintiff and the witnesses for the defendant, which should be settled by the jury, and not by this court. The record also shows this derrick, like all derricks made for the same purpose, was a comparatively frail structure, without any cover over it, exposed to the winds and rains, and subjected to the strain incident to the use of such a structure. Under such circumstances, unless the repeated decisions of this court are to be overruled, I do not think it can be said, as a matter of law, the time had not yet come for an inspection. Indeed, if the version given by the plaintiff is true, it is apparent that an inspection ought to have been made, making it clearly a case for the jury. I do not see how a case could more nearly come within the doctrine announced in *Johnson* v. *Spear, supra*, and the cases there cited, than is this case. The trial judge carefully guarded the interests of the defendant, and I think the judgment should be affirmed.

HOOKER, C. J., and MONTGOMERY, J., concurred with MOORE, J

GRANT, J. (*dissenting*). The duty of the defendant towards the plaintiff is alleged in the declaration to have been to furnish him a safe place in which to work. The negligence charged is that "the derrick had become rotten, unsound, and unsafe, and that its condition was known to the defendant." Plaintiff had been in the employ of the defendant from April 6, 1899, to March 19, 1900, except for a portion of the latter part of the year 1899. He had

been constantly at work in climbing on this derrick from January to March 19, 1900, when the accident occurred. He was employed for that purpose. The derrick had been erected only four years. It was painted red. The brace broke near the middle. The pieces did not fall, but remained attached. Plaintiff testified: "After I struck the ground, I looked up in the derrick, about 30 or 35 feet, and saw that the brace was broken. After I went back to work there (May 28th), I saw that it was broken off." On redirect examination he testified: "The board that broke looked as if it was old,—as if it was rotten." If this statement refers to its appearance as he looked up from the ground after he fell, where he lay with a broken ankle and injured back, it is not entitled to any credence. If it refers to its condition before he fell, he could not, of course, recover; for it would then have been his duty to call the attention of his employer to its condition. Failing in this, he would have assumed the risk. If it refers to the time he returned to work,—two months after the accident,— there is no testimony to indicate under what circumstances he saw it, or what examination he made. Whether the pieces were still hanging to the derrick, 35 feet in the air, or whether they had been taken off and were lying on the ground, exposed to the storm, weather, and dirt, or whether he made any examination at all, is left to conjecture. There is nothing in this testimony to bring home to the defendant knowledge that the brace was defective or that an inspection was required. Whether this rotten appearance appeared upon the outside, or whether it was only discoverable at and by the breaking of the brace, is also wholly conjectural. The mere fact that the brace broke is therefore the sole basis to support a finding of negligence. To hold that such indefinite testimony as to the appearance of the brace is sufficient evidence to show negligence would be a reproach to the law. Parties cannot be deprived of their property upon such worthless testimony.

If the testimony on the part of the defense as to the manner of the accident was true, the breaking of the brace is easily accounted for. This, however, would not be sufficient to entail liability upon defendant. It was incumbent upon the plaintiff to show, not only that an inspection would have disclosed the defect, but that the time between its erection and the accident was such that defendant might have expected decay and weakness. There is no evidence to show any such condition. No complaint is made, and no testimony was introduced to indicate, that this derrick was not properly constructed, and with sound material. The evidence adduced by the defendant shows that it was constructed in the usual manner, and of apparently sound material, and that, according to experience, the structure could be expected to last for several years longer without danger. The court instructed the jury that no fault could be found with the construction of the derrick; that it was erected in accordance with the usual pattern, and was similar to all the derricks in that vicinity; and that there was no evidence that, at the time of its construction, the material used was not reasonably fit for the purpose for which it was used. Employers are not called upon to make an inspection until experience has shown that the time has come when an inspection is reasonably necessary to insure safety. Plaintiff, under his testimony, was doing the work in the usual way. He had been doing the same work for months,—climbing about over this derrick, at the same place, and evidently frequently having hold of the same brace. He had seen nothing to indicate weakness or decay. For some reason, wholly unexplained, it broke. This is not a case of machinery which is wearing out. It is a case of a structure which is conceded to have been erected of sufficient strength and material to accomplish the purpose for which it was erected. The brace was a permanent one, and the defendant had no more reason to anticipate dry rot, or a hidden defect, than would a farmer expect to find such a condition in a brace to his

barn, four years after he erected it. The authorities cited in my Brother's opinion involve the duty of inspection when inspection becomes necessary. They have no bearing, in my judgment, upon a case where common experience in like matters has shown that the time has not come within which decay may be looked for, and thereby inspection rendered necessary. For this reason I shall not attempt to analyze them.

This case is, in my judgment, controlled by *Quincy Mining Co.* v. *Kitts*, 42 Mich. 34 (3 N. W. 240). There two large pieces of timber were placed over a chasm in a mine, for men to walk over. The timbers had been in use, and on the very day of the accident men had frequently walked over them. While the plaintiff was walking across, one of the timbers broke, in consequence of which he fell into the chasm and was seriously injured. The timbers had been in place five years, in a mine, where decay is more rapid than when situated above the ground, and covered with paint. The evidence on the part of the defendant showed that the timber disclosed no defect when put in, and that five years was not time sufficient to cause dangerous decay or weakness. The timberman had made only a casual examination, and had not applied the simple and usual tests. Why the timber broke was wholly unexplained; and the court said:

"The mere fact of such injury is no evidence of such fault. * * * The case affords no safe ground for anything beyond conjecture; and if the master can be held liable under the circumstances which the record discloses, on mere guesses or inferences respecting the existence of fault somewhere, the rule that an employé assumes the ordinary risks of his employment will be wholly done away with."

Wherein does that case differ in principle from this? There was no evidence to show that the mining company had not exercised due care in the selection of the timber. Experience had shown that the time for decay and weakness had not come. Whether there was a concealed knot, or a

space of concealed dry rot, not apparent upon examination, or whether it broke from some other defect, was wholly a matter of conjecture.

Where a machine failed to respond to the release of a lever, in consequence of which plaintiff was injured, it was held that this created no presumption of negligence; and *Quincy Mining Co.* v. *Kitts* was cited with approval. *Redmond* v. *Lumber Co.*, 96 Mich. 545 (55 N. W. 1004). In *Toomey* v. *Steel Works*, 89 Mich. 249 (50 N. W. 850), plaintiff sought to recover upon the sole proof that pieces of a boiler, upon which he was at work, fell upon him. The claim of plaintiff was that the accident showed that the boiler was not properly secured in position. In *Robinson* v. *Charles Wright & Co.*, 94 Mich. 283 (53 N. W. 938), an elevator fell because the key or pin which held the wheel on the axle had come out, and the eye of one of the balance ropes had slipped off the hook. It was held in the above cases that there was no evidence of negligence.

In my judgment, the above cases in principle and reason control this case. It seems to me that to sustain this verdict would make every owner of a structure an insurer of the soundness of the materials used in its construction.

I think the judgment should be reversed, and no new trial ordered.

LONG, J., did not sit.