J. H. STEELE, Appellee, v. THE GRAHL-PETERSON COMPANY, AND F. HERMAN AND SON ET AL., Appellants.

**Negligence:** INJURY TO EMPLOYÉ OF SUBCONTRACTOR: LIABILITY OF CONTRACTOR. A contractor who has negligently constructed certain work is liable to an employé of his subcontractor for an injury caused thereby.

**Negligence:** EVIDENCE. Evidence reviewed and held sufficient to justify a finding that a contractor was negligent in the construction of certain work which resulted in injury to an employé of his subcontractor; also that there was sufficient evidence on the question of contributory negligence to take the issue to the jury.

**Contributory negligence:** HIDDEN DANGER. An employé is under no obligation to search for defects in the construction of a building, which are liable to cause injury to the workmen; he may

rightfully assume that the contractor has performed his duty in providing a reasonably safe place to work.

**Negligence:** JOINT DEFENDANTS: DISMISSAL AS TO ONE. A contractor is charged with the duty of reasonably safe construction for the employés of his subcontractor to work upon; and where the evidence in an action for negligence, brought against both contractors jointly, discloses a liability as to only one a dismissal as to the other will not affect his liability.

**Assumption of risk:** BURDEN OF PROOF. The defendant in an action for negligence has the burden of proof on an issue of assumption of risk, when properly tendered in the answer

*Appeal from Polk District Court.*— HON. J. H. HOWE, Judge.

TUESDAY, NOVEMBER 20, 1906.

REHEARING DENIED FRIDAY, SEPTEMBER 27, 1907.

ACTION at law to recover damages for personal injury. There was a verdict and judgment for plaintiff, and defendants appeal.— *Affirmed.*

*Sullivan & Sullivan,* for appellants.

*Hume & Hamilton,* for appellee.

WEAVER, J.— The circumstances of the plaintiff's injury are as follows:   The north wing of the Statehouse at Des Moines, Iowa, having been partially destroyed by fire the defendants, Grahl-Peterson Company and Herman & Son, obtained the contract for the work of repairing and restoring the building.   As a part of the work required by their contract, defendants filled the spaces between the steel beams or joists intended to support the floor of the upper corridor and gallery with concrete of crushed stone and cement which, when completed and hardened, was designed to be held in place by the flanges projecting from the lower edges of the parallel beams.   To support and hold the mix-

ture in place while still soft, a flooring of tin or sheet iron was laid lengthwise with the beams and resting on short bars or angle irons laid across at frequent intervals from flange to flange. When the concrete hardened properly, which was expected to take place in a short time, the mass became solidified much like a continuous block or slab of stone held firmly in place by the beams, and not dependent upon the sheet iron flooring or the angle bars for its security. At the date in question this work had been completed for some time, except an opening or hole left between two beams immediately in front of a doorway through the middle of a partition which separated the gallery from the corridor in its rear. This opening had been left unfilled temporarily to afford a place through which defendants and their subcontractors operated a rope and pulley or hoist of some kind for elevating materials required in the progress of the work. No floor had been laid over the concrete in the gallery and corridor, but the beams and their filling afforded what was regarded as a safe support for those who were there employed. Defendants had sublet to a corporation known as the " Pioneer Fire Proofing Company " the hollow tile work called for by the plans, and when the building had reached the stage of completion which we have described, this subcontractor, in whose service the plaintiff was then employed, was engaged in said work in the gallery story. Plaintiff, under direction of his employer was assisting in building a scaffold, and it became his duty in said service to carry certain planks from the corridor into the gallery. The corridor and the partition between it and the gallery extend north and south. The planks were at the extreme south end of the corridor or in a room opening therefrom, and the place where they were to be used was near the north end of the gallery. This situation renderd it necessary that persons, carrying the planks, should pass through the partition, and to do this must make use of the doorway near the opening in the floor

or of one of two other doorways opening respectively at the south and the north ends of said partition.

It is the claim of plaintiff that the two doors last mentioned were not available for that purpose because of the narrowness of the way at these points and the proximity of transverse walls which rendered it difficult if not impracticable for him to make the turn with the planks; while the middle door being opposite an opening for a stairway in the north side of the corridor afforded the required room in which to swing the planks and make the passage. For this reason, if for no other, he claims it was proper for him to go through the middle door and across or over the hole in the concrete floor. It appears that this route was the one by which the workmen ordinarily, or, at least, very frequently, passed back and forth. In so doing they sometimes stepped from beam to beam across the open space at a single step, or would step first from one beam to the end of the concrete which bordered the hole, and thence by a second step to the beam on the other side. The plaintiff took this route in carrying the scaffold lumber, and had passed through several times when, according to his story, on stepping upon the concrete filling on the north side of the hole it gave way under him, and he fell through to the floor beneath, receiving severe injuries. It is alleged that defendant, in putting in the concrete, negligently allowed the tin or sheet-iron flooring under the concrete to extend beyond the last angle iron into the hole or open space for a distance of several inches which defect was concealed from view by the overlying concrete, with the result that the projecting end of the filling had no proper or sufficient support, and broke off under the weight of the workmen passing over it. Negligence is further charged in the alleged failure of defendants to furnish the persons there employed a safe place to work, in failing to explain or give notice to the plaintiff of the defect complained of and in failing to properly guard the opening to prevent employés stepping upon the unsupported end of the

filling between the beams. A demurrer to the petition was overruled, and thereupon defendants answered denying negligence on their part, alleging that plaintiff was himself negligent with respect to said accident and pleading an assumption of the risk by him.

I. It is the contention of appellant, that, as the relation of master and servant did not exist between them and the plaintiff, they owed him no duty of care, and therefore this action for damages is not sustainable. The proposition thus stated unduly narrows and restricts the application of the law of negligence. It is true, the relation of master and servant did not exist, nor was there, in the ordinary sense of the word, any contract relation or obligation between the parties, yet, we regard it very clear that defendants did owe to the plaintiff as the servant of the subcontractor and to all other persons rightfully employed on the premises, the duty of exercising reasonable care to avoid exposing them to injury on account of any defective or dangerous conditions existing in such premises. If defendants failed in this duty they were negligent, and if thereby the plaintiff was injured without contributory fault on his part he is entitled to recover even though he was laboring for the subcontractor, and not for the defendants. For the purposes of this case, and so far as the subcontractor and his servants were concerned, defendants as principal contractors in possession and control of the building stood in the same position of responsibility as if they were the owners. In letting the contract to the Pioneer Fire Proofing Company it was necessarily understood and implied that the company would employ and bring into the building such mechanics and laborers as were reasonably necessary to the proper performance of the work and that these mechanics and laborers should work upon its several floors, and carry their materials and tools along its passageways and through its doors as occasion should reasonably require. This was in law an in-

1. NEGLIGENCE: injury to employé of subcontractor: liability of contractor.

vitation to the servants of the subcontractors to enter the building, and imposed upon the defendants the duty of exercising reasonable care that while in such employment the subcontractor and its servants should suffer no injury by reason of defective or dangerous conditions in the building. Mr. Wood in his treatise on the subject says that while the owner is not in general liable for injuries to the servant of a contractor, yet "if the work is done on his premises he is bound by the same legal obligations that exist between him and his immediate servants to keep them in a safe and suitable condition, and is liable to any of the servants of such contractor for injuries resulting to them from defects therein, not under contract obligation, but from the duty he owes to each of the employés, arising out of his obligation to provide such appliances, and this duty extends to keeping the premises upon which the servants of the contractor are at work in a reasonably safe condition whether the contract provides for it or not." Wood on Master and Servant, section 337. Ordinarily, perhaps, this rule will be limited to the condition of the building and premises as they exist when the invitation is extended, and will not be enlarged to impose liability upon the owner or principal contractor for defects or dangers occasioned by the negligence of the subcontractor or his employés.

Speaking upon the same subject, Mr. Thompson says that the owner owes the independent contractor the duty of exercising reasonable care to promote his safety and of such contractor's employés he adds: "Such persons are presumably upon the premises by the invitation of the owner, and he owes them the same measure of care to the end of promoting their safety that he owes to the contractor himself." 1 Thompson's Negligence, section 979. As stated by the Michigan court the rule is that if the premises are in an unsafe condition when handed over to the contractor, and this is known, or in the exercise of reasonable care ought to be known by such owner, the latter is responsible to the serv-

ant of the former who suffers injury without contributory fault on his part. " Every man who expressly or by implication invites others to come upon his premises assumes as to all who accept the invitation the duty to warn them of any danger in coming, which he knows of or ought to know of and of which they are not aware. This is a very just and very familiar principle." *Samuelson v. Mining Co.,* 49 Mich. 164 (13 N. W. 499, 43 Am. Rep. 456). To the same effect see *Bright v. Barrnett,* 88 Wis. 299 (60 N. W. 418, 26 L. R. A. 524); *Johnson v. Spear,* 76 Mich. 139 (42 N. W. 1092, 15 Am. St. Rep. 298); *Neimeyer v. Weyerhaueser,* 95 Iowa, 497; *Toomey v. Donovan,* 158 Mass. 232 (33 N. E. 396); *Bennett v. Railroad Co.,* 102 U. S. 577 (26 L. Ed. 235); *The Helois* (D. C.), 12 Fed. 732; *Devlin v. Smith,* 89 N. Y. 470 (42 Am. Rep. 311); *Coughtry v. Woolen Co.,* 56 N. Y. 124 (15 Am. Rep. 387); *Mulchey v. Society,* 125 Mass. 487; *Reagan v. Electric Light Co.,* 167 Mass. 406 (45 N. E. 743); *Webster City M. Co. v. Mulvanny,* 168 Ill. 311 (48 N. E. 168); *Lumber Co. v. Duggan,* 80 Ill. App. 394; *Hayes v. Coal Co.,* 150 Mass. 457 (23 N. E. 225); *Pelton v. Schmidt,* 104 Mich. 345 (62 N. W. 552, 53 Am. St. Rep. 462); *Nash v. Mill Co.,* 24 Minn. 501 (31 Am. Rep. 349); *Indermaner v. Dames, L. R.* 1 C. P. 274 (L. R.), 2 C. P. 311); *The Joseph B. Thomas,* 46 L. R. A. note 7, page 75; *Guldseth v. Carlin,* 46 N. Y. Supp. 357; *Ella v. Boyce,* 112 Mich. 552 (70 N. W. 1106); *The Cyprus* (D. C.), 55 Fed. 332; *Kelly v. Howell,* 41 Ohio St. 438; *Heaven v. Pender* (L. R.), 11 B. D. 503; *Johnston v. Ott,* 155 Pa. 17 (25 Atl. 751). In the last-cited case a principal contractor excavated a trench for a sewer and sublet the contract to do the brickwork therein. By reason of the negligent manner in which the trench was made or supported it caved in, injuring the plaintiff who was an employé of the subcontractor. A recovery being had the principal contractor appealed, raising the same objection now presented by the appellant herein. Overruling the point the court

says: " The appellants excavated the trench and prepared it for the brickwork.   It was the brickwork only that was sublet.   It was the duty of the appellants to so prepare the trench as to make it reasonably safe for the subcontractor and his employés."

There may be found some cases which are not in apparent harmony with this conclusion, but the rule as stated has the support of the great weight of authority, and is in clear accord with an enlightened sense of justice.   It is not a case in which the ordinary rule as to independent contractors applies.   The sub-contractor did not do the concrete work, and was therefore in no manner responsible for any concealed defect therein.   Defendants had done this work, thereby creating a floor or platform to which the subcontractor was invited and expected to bring his servants to do their part in the further construction of the building, and the latter had the right to assume that defendants had done their duty to render the place reasonably safe for that purpose.   The cases of *Hughbanks v. Investment Co.*, 92 Iowa, 267; *Humpton v. Unterkircher*, 97 Iowa, 509, and others of the same general class which are cited and relied upon by the appellants are not in point.   In the *Hughbanks* case the defendant was the owner of property and let the contract to one Wakefield to erect a building thereon.   Plaintiff was employed by Wakefield through his superintendent of carpenter work, and while so engaged was injured by reason of Wakefield's negligence in setting up a derrick.   For the injuries so received we held the owner was not liable.   The distinction between the cases is obvious.   In that case it was sought to charge the defendant with liability for the negligence of another person, Wakefield, while in the case at bar it is sought to charge defendants with liability for their own negligence.   So, also, in the *Humpton* case, no negligence was charged directly against the defendants.   They had let the work of constructing a building in at least two separate contracts, the brick work to one contractor

and the carpenter work to another.   While both jobs were in progress a scaffold on which the plaintiff, a bricklayer, was at work, being rendered insecure by negligence in the carpenter work fell and injured him. . Our decision there, as in the *Hughbanks* case, went no farther than to hold that the negligence of the independent contractor was not imputable to the owner.   If the entire contract had been let to the carpenter, and he had sublet the brick work to plaintiff's employer; and by reason of a defect in the building occasioned by the carpenter's negligence the scaffold had fallen injuring the plaintiff, and the latter were in court seeking a recovery against the carpenter, then the case would be an authority for our guidance in this controversy.   As it is, however, it needs but little reflection to recognize the wide distinction in the facts and in the principles applicable thereto.

II.   Assuming then that defendant did owe a duty to the subcontractor and its employés while on the premises in the performance of the subcontract, we have next to inquire

2. NEGLIGENCE: evidence.

whether there is any testimony to sustain a finding of negligence in this respect.   A careful reading of the record satisfies us that plaintiff made a case which he was entitled to have submitted to the jury. We shall not take time for any prolonged discussion of the testimony.   It is enough to say that if the jury believed the witnesses they were justified in finding that the sheet iron flooring on which the concrete was placed extended several inches beyond the point of support in the direction of the hole or opening in front of the gallery door, and that the concrete covered this projection to the end thus concealing the defect.   This construction had the effect to allow the projecting end of the concrete work to break across the supporting bar under the weight of a person stepping upon it, and was the occasion of plaintiff's fall.   If this be true, and under the evidence it was for the jury to determine, it shows a state of facts from which it could rightfully be found that the defendants were negligent; for the building, in this re-

gard, was their own construction, and if the defect existed they were bound to use reasonable care to remedy it or guard it for the protection of others who were rightfully on the premises. True, the fact is denied by defendants who claim that the projecting sheet iron was uncovered and in plain view, and that plaintiff negligently or recklessly stepped upon it causing it to bend and give way. Both versions find some support in the testimony, and the conflict is one of fact which the court ought not arbitrarily to withdraw from the jury.

Nor do we find any ground upon which to say as a matter of law that plaintiff was guilty of contributory negligence. While there were other doorways through the partition the evidence fairly tends to show that the one in the middle which the plaintiff used was the only one through which he could conveniently turn in carrying the plank. Moreover, this seems to have been the door most in use by the employés moving about in that part of the structure, and even if all the doors were equally convenient, we should hesitate to say that he must be conclusively held negligent simply because he chose one route rather than the other. See *Huggard v. Glucose Works,* 132 Iowa, 724. The rules of law as to contributory negligence and its effect were properly stated to the jury, and we find no reason for disturbing the verdict on this ground.

Neither is there any room for application of the doctrine of assumption of risk. True, the hole through the floor was patent to the eye, and plaintiff assumed whatever ·

**3. Contributory negligence: hidden danger.** risk was naturally incident to stepping over it or about it, but no negligence is charged on account of the existence of the hole. The alleged negligence consisted in the defective condition of the flooring near the hole, and this defect, and not the hole through which he fell, is relied upon as the proximate cause of plaintiff's injury. If this defect was concealed, or not open to casual observation, as plaintiff's evidence tends to

show, he was under no duty to make minute investigation, but could rightfully assume that defendants had performed their duty, providing a reasonably safe support for the floor, or concrete on which he was expected to walk and work.

III.    The Pioneer Fire Proofing Company, plaintiff's immediate employer, was made a defendant in the action, but was dismissed by the court on the theory that there was no evidence on which such company could be held liable for the injury. Of this ruling the appellants complain, or rather they complain that they were not also dismissed because, as counsel says, if there was no liability on part of the subcontractor as employer there could be no liability on part of the principal contractor who did not have supervision of the work or control of the servant. We are unable to perceive upon what principle counsel arrive at this conclusion. The negligence charged does not arise from any want of care in the supervision of the work, or in the control of the servant, or in the orders or instructions given him. It pertains solely to the duty which the law imposed upon the defendants when they let the contract to the subcontractor by the terms of which the latter was to come upon the premises which they had prepared, and there, upon a floor or platform which they had constructed, perform the work contemplated by the contract. That duty they owed to both the subcontractor and to his employé, and by it they were required to use reasonable care to see that the premises and place to which such persons were by this contract invited were in a reasonably safe condition for that purpose. 1 Thompson's Negligence, section 979. For a violation of that duty by a principal contractor resulting in an injury to the servant of a subcontractor, the latter as we have seen cannot be held liable, at least, not until he knows, or as an ordinarily prudent man ought to discover, the negligence of the principal contractor, and has time to warn or protect the servant against it. If, then, the servant brings an action for damages joining both contractor and sub-

4. NEGLIGENCE: joint-defendants: dismissal as to one.

contractor as defendants, and the evidence developes that the negligence is that of the contractor alone, we think there is no principle of law which will prevent the dismissal of the defendant against whom no case is made and proceeding to a recovery against the one found to be in fault. The record discloses no evidence on which a verdict could have been rendered against the subcontractor, and, in ordering the dismissal, there was no error.

IV.    Exception is taken to the sixth paragraph of the court's charge to the jury. It is too long to be quoted here, but, when read as a whole, it gives the law as to the duty resting upon defendants substantially as we have hereinbefore stated it, and the criticism upon it is not well founded. It is also argued that the ninth paragraph is identical with the instruction which this court condemned in *Martin v. Light Co.*, 131 Iowa, 724, and that for this reason, if for no other, a reversal must follow herein. In this counsel is in error. In the *Martin* case the answer alleged simply that defendant assumed the " risks incident to his employment." This we held did not amount to a defensive plea of assumption of the risk of defendants' negligence, but was the mere statement of the legal effect of the contract of employment, and raised no issue which would not be raised by a simple denial of the petition. It followed therefrom that an instruction that the burden was on defendant to establish the defense of assumption of risk when the only plea tendered was an assumption of the risks incident to the servant's employment, had the effect to neutralize the correct rule which had already been given, and was therefore erroneous. But, in the case at bar, the answer sets up a good and sufficient plea of assumption by plaintiff of the risk arising from the alleged negligence of the defendant and with that issue properly tendered it was correct for the court to instruct, as it did, that the burden of proof was on the defendants to establish by a preponderance of the evidence " the defense of assumption of

5. ASSUMPTION OF RISK: burden of proof.

risk alleged by the defendants in their answer." Other questions have been raised and argued, but all of them seem to be ruled by the conclusions we have already announced, and we need not further consider them.

We find no reversible error, and the judgment of the district court is *affirmed*.